**TEKKNO LABORATORIES, INC.,**
**Plaintiff–Appellee,**

v.

**Cesar A. PERALES, Commissioner of the Department of Social Services of the State of New York, Defendant–Appellant.**

**No. 1293, Docket 90–9104.**

United States Court of Appeals,
Second Circuit.

Argued March 26, 1991.

Decided May 20, 1991.

Mark E. Watkins, (Cooper, Erving, Savage, Nolan & Heller, Albany, N.Y., on the brief), for plaintiff-appellee.

Harvey M. Berman, Asst. Atty. Gen. (Robert Abrams, Atty. Gen., State of N.Y., Lawrence S. Kahn, Deputy Sol. Gen., Robert J. Schack, Gerald Slotnik, Asst. Attys. Gen., New York City, on the brief), for defendant-appellant.

Before OAKES, Chief Judge,
TIMBERS and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Cesar A. Perales, Commissioner of the Department of Social Services of the State of New York ("State" or "DSS") appeals from orders of the United States District Court for the Southern District of New York, John F. Keenan, *Judge*, preliminarily enjoining the State from delaying payment of Medicaid claims submitted to it by plaintiff Tekkno Laboratories, Inc. ("Tekkno"), and holding the State in contempt for noncompliance. On appeal, the State contends principally that (1) the preliminary injunction was impermissible because it granted retroactive monetary relief that is barred by the Eleventh Amendment; (2) the district court abused its discretion in granting an injunction because Tekkno failed to show likelihood of success on the merits of its claim; and (3) the contempt order should be set aside (a) because the injunction was improper, and (b) because the court abused its discretion in refusing to stay the injunction order. For the reasons below, we conclude that the preliminary injunction must be reversed and that the contempt order therefore must also be reversed.

## I. BACKGROUND

According to the complaint, Tekkno is a clinical laboratory that became a Medicaid provider in January 1990. By letter dated September 13, 1990 ("September 13 letter"), DSS notified Tekkno that, pursuant to State regulations requiring verification of claims in order to avoid inappropriate payments, it intended to withhold payment of Medicaid claims submitted by Tekkno until a review could be conducted and the claims could be verified:

Effective immediately payment of your claims under the Medical Assistance Program has been suspended or withheld in connection with this Department's audit of your Medicaid participation. No payment will be made until this review indicates that payment of your submitted claims is appropriate. The withholding will not continue for more than 90 days unless a written draft audit report or notice of proposed agency action is sent to you.

The letter provided the name of a person in the DSS Office of Audit and Quality Control whom Tekkno could contact for further information. On September 17–20, 1990,

DSS proceeded to conduct an on-site inspection of Tekkno's operations.

As of September 21, 1990, Tekkno had submitted to the State claims for some $700,000 that had not been paid. On that date, Tekkno commenced the present action in the district court pursuant to 42 U.S.C. § 1983 (1988), contending, *inter alia,* that the State's withholding of payment of these claims constituted a deprivation of its property without due process of law. It promptly moved for a preliminary injunction requiring the State to cease withholding payments.

The State opposed the motion, stating, *inter alia,* that the September 13 letter had been sent because of an unusually precipitous rise in Tekkno's submission of Medicaid claims, *i.e.,*

| March | $ 15,803 |
| April | $ 32,301 |
| May | $ 57,623 |
| June | $123,803 |
| July | $145,999 |
| August | $269,600 |
| September | $857,716 |

As a result of the inspection of Tekkno's operations from September 17 through September 20, DSS found quality control problems and inaccurate methodology, casting doubt on the validity of most of Tekkno's submissions and reflecting the possible endangerment of the health of patients. It reported these findings in an 11–page letter to Tekkno dated October 10, 1990 ("October 10 letter"), detailing the failures it found, including improperly conducted tests, incorrect reporting of test results, reports of test results that are "not compatible with human life," and failure to report to health authorities test results showing communicable and sexually transmitted diseases, as required by law. In addition, it stated that DSS had determined that Tekkno had violated Medicaid regulations that prohibit, *inter alia,* the submission of false claims and the acceptance of bribes and kickbacks. The October 10 letter informed Tekkno that DSS proposed to take action against it, including (a) seeking recovery of past overpayments, (b) making a prepayment audit of current claims, and (c) excluding Tekkno from participation in the Medicaid program for five years. The State estimated that some 80% of Tekkno's unpaid claims were likely to be rejected as improper.

By order dated November 8, 1990, and amended on November 14, 1990 ("Injunctive Order"), the court granted Tekkno's motion for a preliminary injunction prohibiting the withholding of payment of its claims, stating, in pertinent part, as follows:

> THIS CAUSE came on to be heard on plaintiff's motion for a preliminary injunction and the Court having considered the verified complaint, the affidavits and memoranda of law submitted in support of the motion and in opposition thereto, and having heard oral argument and due deliberation having been had, the Court finds:
>
> 1. That the Court has jurisdiction of the subject matter of this cause;
>
> 2. That plaintiff has demonstrated irreparable harm and a likelihood of prevailing on the merits, alternatively, plaintiff has raised sufficiently serious questions going to the merits as to make them a fair ground for litigation and the balance of hardships tips decidedly in its favor.
>
> NOW, THEREFORE, in accordance with the foregoing findings, it is ordered that the defendant and all persons acting on his behalf are hereby enjoined from withholding or suspending plaintiff's claims for reimbursement through the use of 18 NYCRR part 518 and 18 NYCRR part 519 pending the resolution of this lawsuit;
>
> IT IS FURTHER ORDERED that defendant and all persons acting on his behalf are hereby enjoined from withholding or suspending plaintiff's claims for reimbursement so withheld pursuant to 18 NYCRR Part 518 and 18 NYCRR Part 519 prior to the date of this order, and they are hereby directed forthwith to release such funds to plaintiff....

As security, Tekkno was ordered to post a bond in the amount of $50,000.

The State did not comply with the Injunctive Order. On November 16, 1990, it ap-

parently sent the court a letter seeking a stay and reconsideration; on November 26, it moved for that relief formally by order to show cause. Tekkno cross-moved for an order holding the State in contempt. In an Opinion and Order dated January 7, 1991 ("January 7 Opinion"), 1991 WL 3002, the court denied the State's motion and granted Tekkno's request that the State be held in contempt. In denying the State's motion for reconsideration, the court stated in part as follows:

> The charges made by defendant are clearly serious. The Court recognizes now, as it did when it issued the preliminary injunction, that if the charges made by DSS are true, the health of patients could be endangered. The Court is also aware that if the charges are true defendant might be within its rights to terminate Tekkno as a Medicaid provider.
>
> It is important, however, to keep in mind that plaintiff's complaint charges that its due process rights were violated when DSS began to withhold Tekkno's Medicaid payments. *See* Complaint ¶ 8. Plaintiff charges that the initial withholding, which was announced *before* the September 17–20 audit which was the source of the charges in the two notices, occurred without any hearing, without any explanation of justification, and without any explanation of the charges against Tekkno. *See* Complaint ¶ 9. While defendant attempts to impress upon the Court the seriousness of the alleged deficiencies at Tekkno, the issue in the case is whether Tekkno's due process rights were violated by the *procedures* that DSS employed in acting on its suspicions that Tekkno's operations were flawed. The Court's decision to issue the November 14 order was guided by its preliminary assessment of plaintiff's due process claims, and was not encumbered by the mistaken notion that this stage of the case requires a determination of whether DSS is correct in insisting that a potentially dangerous situation existed at Tekkno.

*Id.* at 8–9 (emphasis in original). The court proceeded to describe an affidavit submitted by Tekkno, stating that Tekkno de-

pended on Medicaid reimbursements for some 90% of its revenues, and found on the basis of these representations that Tekkno had shown that it would suffer irreparable harm unless injunctive relief were granted. On the basis that the State had begun to withhold payments without prior notice or a prior opportunity for Tekkno to be heard, the court concluded that Tekkno was likely to prevail on the merits of its due process claim.

The court found the State's noncompliance with the injunction unjustifiable and held the State in contempt. As sanctions, the court fined the State $50 for each business day from November 14 through January 7, for a total of $1,650; it prospectively imposed fines of $100 for each business day of noncompliance after January 7. We are informed that the court thereafter granted a stay of both the Injunctive Order and the order of contempt.

## II. DISCUSSION

On this appeal, the State contends principally (1) that the preliminary injunction must be vacated because it requires the retroactive payment of money, a remedy barred by the Eleventh Amendment; (2) that the injunction was an abuse of discretion because Tekkno had failed to show likelihood of success on the merits of its due process claim, both (a) because it has no cognizable property interest in Medicaid reimbursement, and (b) because a postwithholding hearing suffices to protect whatever interest Tekkno has; and (3) the contempt order must be set aside (a) because the injunction on which it is based was impermissible, and (b) because the district court abused its discretion in not staying the Injunctive Order. For the reasons below, we conclude that the preliminary injunction must be reversed for lack of subject matter jurisdiction and that the contempt order therefore must also be reversed.

### A. *The Injunctive Order*

We find flaws, substantive and procedural, in the preliminary injunction

granted here. The procedural flaw is that the Injunctive Order failed to comply with Fed.R.Civ.P. 52(a), which provides, in pertinent part, that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." A principal purpose of this requirement, of course, is to permit the appellate court to review the decision. *Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure."). Although we may proceed with our review despite inadequate findings if we " 'can discern enough solid facts from the record to enable [us] to render a decision,' " *Canadian Transport Co. v. Irving Trust Co.*, 548 F.2d 53, 55 (2d Cir.1977) (per curiam) (quoting *English v. Town of Huntington*, 448 F.2d 319, 321 (2d Cir.1971)), we will normally vacate the order if the findings and the record are not sufficient to enable us to be sure of the basis of the decision below, *see, e.g., Weitzman v. Stein*, 897 F.2d 653, 658 (2d Cir. 1990); *Badgley v. Santacroce*, 815 F.2d 888 (2d Cir.1987) (per curiam); 9 C. Wright & A. Miller, *Federal Practice and Procedure* ¶ 2577, at 697 (1971).

The Injunctive Order in the present case, all of whose pertinent provisions are quoted in Part I above, did not set forth any findings of fact or any substantive conclusions of law. It stated in conclusory terms that the court had subject matter jurisdiction and that Tekkno had demonstrated irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. While these statements reflect an understanding of this Circuit's general standard for the granting of a preliminary injunction, *see, e.g., Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *but see Plaza Health Laboratories, Inc. v. Pe-*

*rales*, 878 F.2d 577, 580 (2d Cir.1989) (likelihood of success, rather than lesser standard of fair grounds for litigation, must be met where moving party "seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme"); *Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977) (same)), they do not provide any basis on which the appellate court may assess whether the district court has properly exercised its discretion. Since there were no findings in the Injunctive Order itself and there was no accompanying explanatory opinion, had we been asked to review the Injunctive Order prior to the court's issuance of its January 7 Opinion, we would have been compelled to vacate the injunction and remand for compliance with Rule 52(a). We would also have vacated any order of contempt entered on the basis of the Injunctive Order because of the impossibility of review of the injunction on which the contempt order was based.

When the court issued its January 7 Opinion, however, it set forth at some length its factual and doctrinal bases for the injunction, thus providing this Court with a basis on which to review the Injunctive Order. Thus, we may proceed to review the Injunctive Order without remanding for findings.

■ Our principal substantive difficulty with the Injunctive Order in light of the findings made in the January 7 Opinion is that its assessment of Tekkno's likelihood of succeeding on the merits does not deal with the Eleventh Amendment problem. The Eleventh Amendment provides a state, as well as its agencies and its officials acting in their official capacities, with protection from suits in federal court for damages for past wrongs. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In general, federal suits against such defendants for monetary awards out of state funds are barred. Thus, in *Edelman v. Jordan*, the Court ruled that the district court lacked the power to grant retroactive payments to plaintiffs who claimed to have been deprived of welfare benefits to which they were enti-

tled by statute. It stated that in "a § 1983 action ... a federal court's remedial power ... may not include a retroactive award which requires the payment of funds from the state treasury." *Id.* at 677, 94 S.Ct. at 1362. Accordingly, though the district court was held to have the power to grant prospective relief, including restoration of the plaintiffs to the welfare rolls, it had no power in light of the Eleventh Amendment to award past-due welfare benefits that "should have been paid, but [were] not." *Id.* at 664, 94 S.Ct. at 1356.

■ The Eleventh Amendment principles established in *Edelman v. Jordan* are equally applicable to claims against the states by Medicaid providers, *see, e.g., Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981). Tekkno's attempts to parry the Eleventh Amendment defense on this appeal lack even facial plausibility. For example, it argues that "[t]he injury suffered by Tekkno brings this case squarely within the exception for prospective monetary relief," stating that "[t]he relief granted by the district court is not compensation for the damage suffered by Tekkno, it merely directs that the illegal deprivation shall not continue to Tekkno's further injury." (Tekkno brief on appeal at 21.) This argument is specious. The Injunctive Order explicitly ordered the State to pay moneys out of its treasury in compensation of the claims submitted by Tekkno "prior to the date of this order." Though Tekkno seeks to get around this problem by labeling its claim as one for "the return of its property" and calling the withheld payments "funds seized" from Tekkno, in the present circumstances these characterizations are frivolous.

In sum, though Tekkno has demanded other, prospective, relief in its complaint, the preliminary injunction grants interim relief that the district court had no jurisdiction to grant in light of the Eleventh Amendment.

Finally, we note that the Injunctive Order prohibits the State from withholding payment of Tekkno's claims "pending the resolution of this lawsuit." Though that provision could have had some prospective effect if Tekkno had submitted new claims after November 14, it appears to have had no such effect since (a) the record does not indicate that any new claims were submitted, and (b) the record reveals that Tekkno was terminated as a Medicaid provider as of December 1, 1990. To the extent that the injunction was intended to have, or may have had, prospective effect, we note two difficulties with the assessment of Tekkno's likelihood of success on the merits. First, in making its assessment, the district court stated that it was persuaded by *Patchogue Nursing Center v. Bowen,* 797 F.2d 1137, 1144–45 (2d Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987), and *Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir.1984), that "plaintiffs like Tekkno have a constitutionally protected property interest in reimbursement for Medicaid services already performed." January 7 Opinion at 11. Neither of those cases, however, involved the State's withholding of payments pending investigation. Rather, *Oberlander* involved changes in Medicaid reimbursement rates, and we ruled that under state law the provider has no property interest in future reimbursements; and *Patchogue* involved the termination of the providers' participation in the program. *See also Kelly Kare, Ltd. v. O'Rourke,* 930 F.2d 170, 175 (2d Cir.1991) (Medicaid providers in New York have no property interest in continuous participation in Medicaid programs). Second, neither of these authorities stands for the proposition that, where the State gives notice that it is withholding payment pending an investigation of billings it has reason to suspect, provision of a hearing to be held after that notice would not suffice to satisfy the Due Process Clause. *See, e.g., FDIC v. Mallen,* 486 U.S. 230, 240–47, 108 S.Ct. 1780, 1787–91, 100 L.Ed.2d 265 (1988); *id.* at 240, 108 S.Ct. at 1787 ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the

opportunity to be heard until after the initial deprivation.").

### B. *The Contempt Order*

■ Where a federal court lacks subject matter jurisdiction to grant a particular type of injunction, it also lacks the power to issue a civil contempt order for noncompliance with that injunction. *See, e.g., United States Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 78–79, 108 S.Ct. 2268, 2271–72, 101 L.Ed.2d 69 (1988); *United States v. United Mine Workers,* 330 U.S. 258, 295, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947). Accordingly, since the contempt order punished the State for not complying with the Injunctive Order, and the Injunctive Order was impermissible, the contempt order also must be vacated.

■ Two other points are perhaps worthy of note. First, even had we found the injunction sustainable on the basis of the findings made in the January 7 Opinion, we would vacate the contempt order since to uphold it would in effect permit the court to hold a party in contempt retroactively to a time at which no valid court order had been entered. Second, we reject the State's notion that the contempt order was an abuse of discretion simply because the State had sent the court a letter asking for a stay or reconsideration. Such a letter does not stay the effect of an injunctive order, and the party to whom the injunction is directed acts (or fails to act) at its peril if it declines to comply while waiting for decision on a stay application, especially an informal one.

### CONCLUSION

We have considered all of Tekkno's arguments in support of the district court's orders and have found them to be without merit. The Injunctive Order dated November 14, 1990, is reversed; the order of contempt entered on January 7, 1991, is reversed. The matter is remanded for further proceedings not inconsistent with this opinion.

OAKES, Chief Judge, concurring:

I concur in the result.

I do believe it should be noted, in connection with the lack of findings in the earlier injunctive order of November 8, 1990, as amended on November 14, 1990, that this was only the latest in a series of cases before the same judge brought by providers of Medicaid services involving the same defendant, the same underlying set of facts and the same issue—whether payment of claims approved subject to audit may be withheld for up to six months pursuant to the state agency's authority to review and verify payments, without prior hearing or notification to the provider. *See, e.g., Medecorp Labs., Inc. v. Perales,* 89 Civ. 7320, 1990 WL 55703 (S.D.N.Y. Dec. 11, 1989); *Quantum Lab., Inc. v. Perales,* 88 Civ. 8487 (S.D.N.Y. Dec. 15, 1988); *Eastwick Medical Labs. v. Perales,* 88 Civ. 7685 (S.D. N.Y. Nov. 29, 1988); *Franklin Medical Lab., Inc. v. Perales,* 88 Civ. 7520 (S.D.N.Y. Nov. 7, 1988); *Continental Lab., Inc. v. Perales,* 88 Civ. 6649 (S.D.N.Y. Nov. 7, 1988); *Modern Medical Lab., Inc. v. Perales,* 88 Civ. 6648 (S.D.N.Y. Nov. 7, 1988); *Plaza Health Labs., Inc. v. Perales,* 88 Civ. 6647 (S.D.N.Y. Nov. 7, 1988); *ADL, Inc. v. Perales,* 88 Civ. 4749, 1989 WL 83390 (S.D. N.Y. Aug. 2, 1988). I note also that the state thought that the courts' prior cases were distinguishable only on the basis that *this* case involved "substantiated evidence of threats to Medicaid recipients' health." Affidavit of Robert J. Schack, Assistant Attorney General (Nov. 23, 1990). I am confident that the district court had these other cases in mind, particularly since a lengthy opinion in the *ADL* case is included in the record before us. Nevertheless, facts such as the amounts of payments due and withheld as well as the evidence relating to threats to Medicaid recipients' health could have bearing on any review.

I also do not think the majority opinion's discussion of the likelihood of success on the merits gives sufficient weight to our observation in *Oberlander v. Perales,* 740 F.2d 116 (2d Cir.1984), that "[i]n contrast to the refusal to recognize a property interest in future Medicaid reimbursement, New

York acknowledges a property interest in money paid for services already performed in reliance on a duly promulgated reimbursement rate." *Id.* at 120. While it is true that *Oberlander* did not involve the state's withholding of payments pending investigation, it nevertheless held—as seems perfectly reasonable—that a provider has a constitutionally protected property interest in reimbursement for Medicaid services already performed, just as the district court held. While it is true that the district court order did not discuss whether a post-withholding hearing, as in *FDIC v. Mallen,* 486 U.S. 230, 240–47, 108 S.Ct. 1780, 1787–91, 100 L.Ed.2d 265 (1988), would adequately protect Tekkno's right to payment, the court considered this question very extensively in the *ADL* case, incorporated in our record, and found that the new DSS regulations under the *Mallen* test would probably not satisfy due process. I agree with the district court on this point.

Nevertheless, I concur in the result because I cannot find a distinction for Eleventh Amendment purposes between a damage action for a past state wrong and a due process action for money in which plaintiff holds a property interest. In other words, what seems to me to be the ultimate question in the case is whether Eleventh Amendment analysis is complete once it is determined that the relief sought would tap the state treasury and that the state has not waived its immunity. Under the Eleventh Amendment cases to date decided by the Supreme Court, I am forced to conclude that the answer to this ultimate question is in the affirmative.