**BOARD OF GOVERNORS of the FEDERAL RESERVE SYSTEM, Plaintiff,**

v.

**Ghaith R. PHARAON, Defendant.**

No. 91 Civ. 6250 (PKL).

United States District Court, S.D. New York.

Dec. 16, 1991.

Thomas Baxter, New York City (Richard Small, of counsel), for plaintiff.

Whitman and Ransom, New York City (Richard F. Lawler and Jeanne Rowzee, of counsel), for defendant.

Faust, Rabbach & Stanger, New York City (David Faust, of counsel), for non-party witness Amer Lodhi.

Robert M. Morgenthau, Dist. Atty., New York County, New York City (John W. Moscow and Veronica Bindrim–MacDevitt, of counsel), for New York County.

## OPINION AND ORDER

LEISURE, District Judge.

In what appears to be the opening salvo in the litigation that has begun to unfold from the activities of the Bank of Credit and Commerce International, S.A., Luxembourg ("BCCI"), Robert M. Morgenthau, the District Attorney of New York County ("District Attorney"), and the defendant, Ghaith R. Pharaon ("Pharaon"), both move the Court by Order to Show Cause, seeking, respectively, to stay and to compel depositions of certain non-party witness pursuant to Fed.R.Civ.P. 26(c) and 37(a). Pharaon also moves the Court, pursuant to Fed.R.Civ.P. 37(a)(4), to impose costs on Amer Lodhi ("Lodhi"), one of the non-party witnesses that Pharaon is seeking to depose, and prospectively to threaten Lodhi with contempt pursuant to Fed.R.Civ.P. 45(e). Having carefully reviewed the submissions of the parties, and having heard oral argument on December 11, 1991, the Court grants the District Attorney's application, staying the depositions until January 23, 1992. Pharaon's various applications for relief are denied, except to the extent that Pharaon can notice a deposition of Lodhi for January 24, 1991.

## I. BACKGROUND

### A. *The Underlying Action*

The instant action was commenced on September 17, 1991, when this Judge signed an Order to Show Cause and Temporary Restraining Order ("TRO") brought on behalf of the Board of Governors of the Federal Reserve System ("Federal Reserve"). The TRO froze Pharaon's assets in the United States, pursuant to Section 8(i) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(i)(4), and the Debt Collection Act, 28 U.S.C. §§ 3001–3015. Although a hearing on the TRO was initially scheduled for September 26, 1991, the TRO has been extended on consent of the parties, by Stipulations and Orders dated September 23, 1991 and October 11, 1991. *See* Fed.R.Civ.P. 65(b) (TRO may be extended beyond ten days if "party against whom the order is directed consents that it may be extended for a longer period").

The instant proceeding parallels an administrative enforcement proceeding, before Administrative Law Judge Walter J. Alprin of the Office of Financial Institution Adjudication, initiated by the Federal Reserve on September 13, 1991, which seeks, *inter alia,* a civil money penalty against Pharaon for violations of the Bank Holding Company Act of 1956, as amended, 12 U.S.C. §§ 1841–1850. In substance, the Federal Reserve alleges that, in June 1985, Pharaon received approval from the Federal Deposit Insurance Corporation, pursuant to 12 U.S.C. § 1817(j), for his acquisition of 100% of the shares of the Independence Bank, Encino, California ("Independence"), based on his representation that he was acquiring Independence in his individual capacity. In fact, alleges the Federal Reserve, Pharaon was acting on behalf of BCCI and International Credit and Investment Company (Overseas) Ltd., George Town, Grand Cayman ("ICIC"), in purchasing the Independence shares, pursuant to a

Nominee Agreement that ICIC had entered into with Pharaon on BCCI's behalf.

The Federal Reserve claims that Pharaon's arrangement with ICIC and BCCI violated 12 U.S.C. §§ 1841(a) and 1842(a), which prohibit direct or indirect acquisition of 25 percent or more of the voting shares of a bank by a company, and acquisition of 5 percent or more of the voting shares of a bank by an existing bank holding company, without prior approval of the Federal Reserve. It is also claimed that the arrangement violated 12 U.S.C. §§ 1844(c) and 3106(a), and 12 C.F.R. § 225.5, which are reporting and disclosure requirements for bank holding companies and foreign banks. Based on these allegations, and pursuant to 12 U.S.C. §§ 1818(i) and 1847(b), the Federal Reserve is seeking a thirty-seven million dollar fine against Pharaon. After commencing the administrative proceeding, the Federal Reserve applied to this Court for the TRO that has frozen Pharaon's assets, which is authorized by 12 U.S.C. § 1818(i)(4) upon a prima facie showing that the remedy sought by the agency is appropriate.

### B. *The Instant Orders to Show Cause*

In the face of the charges against him, Pharaon began making discovery requests. Three of the non-party witnesses that Pharaon sought to depose and from whom documents were requested were Lodhi, Abol Helmy ("Helmy") and Louis Saubolle ("Saubolle"). Accordingly, Pharaon obtained Deposition Subpoenas, issued by the Clerk of this Court pursuant to Fed. R.Civ.P. 45(a), noticing depositions of Lodhi, Helmy and Saubolle, to be held on December 5, December 12 and December 13, respectively. After nine unsuccessful attempts at service, Pharaon caused a subpoena to be served upon Lodhi, on November 19, 1991, at the District Attorney's office, based on information supplied to Pharaon by the District Attorney. *See* Declaration of Richard F. Lawler, Esq., executed on December 5, 1991 ¶¶ 3–5. This subpoena ordered Lodhi to be deposed and to produce a wide range of documents, relating to his involvement with BCCI, ICIC and Pharaon, including "[c]opies of all

documents provided to ... any ... law enforcement agency." *See* Order to Show Cause to Compel Deposition Testimony of Non–Party Witness Amer Lodhi, Exh. C, at 5–10 & ¶ 15.

In response to Pharaon's attempt to depose Lodhi, Helmy and Saubolle, the District Attorney moved, on December 5, 1991, by Order to Show Cause, to intervene in the instant proceeding and to stay these non-party witness depositions. The District Attorney's application was based on the assertion that Pharaon:

> has sought and obtained an injunction preventing necessary and critical witnesses to [the state] case from producing evidence before the New York County Grand Jury.... Thus, the effect of permitting Ghaith R. Pharaon to depose the three witnesses would to [sic] allow him to obtain material discovery in the criminal case, through civil discovery process [sic].... The criminal investigation and prosecution presently pending in New York County would be frustrated and prejudiced by the early disclosure of the testimony of the three witnesses prior to the time for such disclosure in a state criminal proceeding under New York State law.

Memorandum of Law of New York County District Attorney in Support of Application for Order to Show Cause, at 1–3. Upon receipt of this application, this Court temporarily stayed the depositions, pending oral argument and a determination of the merits of the Order to Show Cause.

The District Attorney has stressed that a major goal of the stay is the preservation of the confidentiality of the Grand Jury proceedings concerning Pharaon and BCCI. Thus, at the hearing on December 11, the District Attorney was reluctant to reveal, in the presence of defense counsel, whether Lodhi, Helmy and Saubolle had testified before the Grand Jury. The Court therefore held an *in camera* hearing in the robing room, in which the District Attorney revealed the status of the Grand Jury investigation as it relates to these three non-party witnesses. It is also important to realize that the stay of discovery that is

sought by the District Attorney is not of indefinite scope and duration. The District Attorney has represented to the Court that the Grand Jury will have decided whether or not to indict Pharaon by January 23, 1992. *See* Transcript of Oral Argument, heard on December 10, 1991 ("Transcript"), at 12. Thus, the application of the District Attorney that is before the Court is only for a stay of the depositions until late January 1992.

Shortly after the non-party witness depositions were stayed on the District Attorney's application, Pharaon moved by Order to Show Cause to compel Lodhi's deposition. Pharaon asserts that Lodhi "was intimately involved in virtually all" of the transactions at issue in this case, and that Lodhi's "testimony is ... essential to Mr. Pharaon's defense of the [Federal Reserve's] allegations." Memorandum of Law in Support of Defendant Pharaon's Order to Show Cause to Compel Deposition Testimony, at 2–3.

Pharaon also moves to recover costs and for a prospective Order of Contempt against Lodhi, in case the Court orders a date for Lodhi to be deposed and he fails to appear. This application is based on Pharaon's claim that he was informed by the District Attorney, three or four days before Lodhi's scheduled deposition, that Lodhi was in Pakistan, and would not be appearing for the deposition noticed for December 5, 1991. It is Pharaon's position that Lodhi would not have appeared at the December 5 deposition even if the Court had not ordered the deposition to be stayed. *See* Transcript, at 25–28. Pharaon therefore asserts that Lodhi was acting contemptuously, and calls upon the Court to impose costs and threaten him with contempt. *Id.*

### C. The English Injunction

In opposing Pharaon's attempt to depose Lodhi, Helmy and Saubolle, the District Attorney places great reliance on an injunction procured by Pharaon from the High Court of Justice, in London, England (the "English Injunction"). The English Injunction prevents BCCI and other parties from:

delivering up or disclosure to the Grand Jury in the County of New York empaneled in the matter of the People of the State of New York v. John Doe (BCCI) ... [of] all documents and information ... concerning or relating to [Pharaon's] accounts with [BCCI] or any of item [sic] or otherwise relating to the business of [Pharaon].

*Pharaon v. Bank of Credit and Commerce International SA*, No. 1990 –P– No. 4181 (High Court of Justice, Queen's Bench Division Aug. 13, 1990). According to Pharaon, the English Injunction was sought because BCCI had been served by the District Attorney with an extremely broad subpoena, requesting all documents relating to Pharaon, at the same time that BCCI was refusing to provide Pharaon with his own financial records. *See* Declaration of Richard F. Lawler in Opposition to the New York County District Attorney's Application to Stay Discovery ¶ 2.

The District Attorney contends that the depositions of Lodhi, Helmy and Saubolle actually are an attempt by Pharaon to get discovery relating "to the entire universe of Pharaon's dealings with BCCI from 1975 on," at the same time that Pharaon has taken affirmative action, by obtaining the English Injunction, to prevent the District Attorney from gaining access to this evidence. Transcript, at 41–42. The District Attorney concedes that some BCCI documents concerning Pharaon have been made available, despite the English Injunction, as a result of legal action taken by the Bank of England. *See id.* at 8–9, 35. Nevertheless, the English Injunction has prevented the Grand Jury from gaining access to testimonial and documentary evidence "which would have quite possibly resulted in affirmative action having been taken [by the Grand Jury] previously." *Id.*

### D. Additional Considerations

Before proceeding to a discussion of the law, the Court pauses to consider a series of related matters which impact on the Court's consideration of the case at bar. First, the discovery issues now facing the Court have already been the subject of an

Opinion by Judge Alprin in the administrative proceeding. *See In re Pharaon*, No. 91–037–E–I1, at 6–7 (Dec. 6, 1991). In his Opinion, Judge Alprin denied the Federal Reserve's application to stay these non-party witness depositions, based on his finding that there is no statutory "law enforcement privilege." *See id.*

The Court next notes that the Federal Reserve supports the District Attorney's application to stay the depositions. The Federal Reserve's position is that the most relevant evidence on the meaning of the Nominee Agreement executed by Pharaon is the testimony of Pharaon himself, and that the testimony of Lodhi, Helmy and Saubolle, who were Pharaon's agents, pales in comparison. In fact, the Federal Reserve has asked Judge Alprin to issue a subpoena ordering Pharaon to be deposed on January 6, 1992. *See* Transcript, at 37.

Another matter of interest to the Court is the position of Lodhi. It appears that, in the face of the instant proceedings, Lodhi retained counsel on December 9, 1991. *See* Affirmation of David Faust, Esq., executed on December 9, 1991. Lodhi's counsel has represented to the Court that Lodhi will be out of the United States on business until mid-January. Lodhi has therefore requested a delay of the deposition so that he can return to the United States in the regular course of business and have time to consult with his attorney before being deposed.

Finally, the Court notes that Pharaon has been named in a criminal indictment, No. 91–0655 (JHG), that was handed down by a federal Grand Jury in Washington D.C. on November 15, 1991. Although there is a bench warrant outstanding for Pharaon's arrest, he has not surrendered. *See* Transcript, at 30. Pharaon must therefore be characterized as a fugitive. *See United States v. Eng*, 951 F.2d 461, 464 (2d Cir.1991) ("When a person purposely leaves the jurisdiction or decides not to return to it, in order to avoid prosecution, he is a fugitive.").

## II. DISCUSSION

### A. *District Attorney Application to Intervene*

■ The District Attorney's Order to Show Cause first moves to intervene pursuant to Fed.R.Civ.P. 24(b)(2), which provides for permissive intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." Pharaon does not oppose the intervention motion. *See* Transcript, at 3; Memorandum of Law in Opposition to the New York County District Attorney's Application to Stay Depositions, at 4 n. 2.

There is clear precedent for allowing a State to intervene in a federal civil action when there is a pending state criminal action involving common questions of law or fact. *See Finnan v. I.S.C.I. Ltd.*, No. 80 Civ. 0371 (PNL) (S.D.N.Y. Jan. 4, 1982) (allowing permissive intervention of District Attorney to apply for protective order); *see also S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir.1988) ("The [U.S. Attorney] had a discernable interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter."); *First Merchant's Enterprises, Inc. v. Shannon*, 1989 WL 25214, 1989 U.S.Dist. LEXIS 2512 (S.D.N.Y.1989) (allowing United States Attorney to intervene in civil action); *SEC v. United States Realty and Improvement Co.*, 310 U.S. 434, 460, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293 (1940) (the government "has a sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it" to intervene). The application of the District Attorney to intervene for the purpose of seeking a stay of discovery therefore is granted.

### B. *Applications to Stay and to Compel Depositions*

■ The District Attorney's application to stay the non-party witness depositions of Lodhi, Helmy and Saubolle presents a number of compelling arguments.[1] First, the

---

1. The issues raised by Pharaon's Order to Show Cause to compel Lodhi's deposition converge with the District Attorney's Order to Show

District Attorney asserts that the evidence covered by the English Injunction parallels the discovery that Pharaon is seeking in the instant proceeding, and that Pharaon should not be provided with discovery in the federal court when he has attempted to block the Grand Jury's access to this same evidence. *See* Transcript, at 41–42 (statement of John Moscow, Esq.) ("[Pharaon] doesn't want us to have it. He does want to have it."). The District Attorney also contends that the stay is needed to protect the confidentiality of the Grand Jury proceedings, and to ensure the proper timing of disclosure of evidence in any New York State criminal proceeding that results from the continuing Grand Jury investigation.

■ The decision whether a stay of discovery is appropriate "involves a balancing of the interests at stake." *First Merchant's Enterprises, supra,* 1989 WL 25214, *2, 1989 U.S.Dist. LEXIS 2512, *4. The guiding principle in the inquiry is that:

A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial. Judicial discretion and procedural flexibility should be utilized to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other.

*Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963).

In determining whether the non-party witness depositions should be stayed, a major consideration is whether the witnesses have testified, or are about to testify, before the Grand Jury. Thus, in *First Merchant's, supra,* which involved parallel civil and criminal federal cases, the Court stayed the deposition of a non-party witness who was cooperating with the Grand

Jury, pending the conclusion of the investigation and the resolution of any charges ultimately brought against the defendant. Similarly, *Finnan, supra,* No. 80 Civ. 0371, involved parallel state criminal and federal civil actions, where the non-party witness had already testified before the New York Grand Jury. In *Finnan,* Judge Leval noted that staying a deposition in a federal civil action until a state criminal case is completed is a common remedy.[2] *See id.; see also Wallace v. General Electric Co.,* 1989 WL 13701, 1989 U.S.Dist. LEXIS 1604 (E.D.Pa.1989) (staying federal civil deposition of investigating officer pending completion of state criminal case); *Founding Church of Scientology, Inc. v. Kelley,* 77 F.R.D. 378, 381 (D.D.C.1977) (refusing to compel federal civil interrogatories during pendency of federal criminal Grand Jury investigation); *S.E.C. v. Control Metals Corp.,* 57 F.R.D. 56, 58 (S.D.N.Y.1972) (staying federal civil depositions of non-party witnesses likely to testify before federal Grand Jury).

### 1. Pharaon Objections to Stay Depositions

Pharaon objects to staying the depositions on a number of bases. The first objection points out that Fed.R.Civ.P. 26(c) requires a showing of good cause for the issuance of a protective order, and asserts that the District Attorney has not demonstrated good cause in the instant case. *See Cooper v. Welch Foods, Inc.,* 105 F.R.D. 4, 6 (W.D.N.Y.1984). Pharaon also relies on *United States v. Banco Cafetero International,* 107 F.R.D. 361, 366 (S.D.N.Y.1985), which rejected an open ended stay of discovery in a civil forfeiture proceeding pending resolution of an investigation by a federal Grand Jury. *Banco Cafetero* denied the stay because the government had only made "conclusory and insufficient" allegations of the prejudice that would result from continued discovery, and because the

---

Cause to stay the depositions. The Court therefore considers the applications jointly.

2. Judge Leval did allow the deposition of the non-party witness to proceed under seal in *Finnan,* but only because the District Attorney stated that the state's interest would be sufficiently

protected if the deposition proceeded in this manner. Although Pharaon has expressed a desire to take the non-party witness depositions under seal in this case, the District Attorney has not consented to this procedure.

stay that was sought by the government was of indefinite scope and duration. *Id.* at 366. *Banco Cafetero* thus makes clear that a Court must hesitate before granting a blanket stay of discovery in a civil proceeding, based on conclusory allegations of prejudice and on the mere possibility that a non-party witness may be called to testify before the Grand Jury.

However, the instant case differs substantially from *Banco Cafetero.* The District Attorney is not requesting a stay of infinite scope and duration, but rather has represented that the Grand Jury will have decided whether or not to indict Pharaon by January 23, 1992. Moreover, although Pharaon asserts that the District Attorney has not demonstrated that any prejudice will result if the Court allows the depositions to proceed, the prejudice that would be suffered is obvious. N.Y.C.P.L. § 240.45 provides for disclosure of Grand Jury statements by the People's witnesses only after a jury has been sworn at trial, and the Court is satisfied, based on the information disclosed by the District Attorney during the *in camera* hearing, that the District Attorney would be prejudiced by having the depositions of Lodhi, Helmy and Saubolle proceed at this time. Additionally, Pharaon's procurement of the English Injunction was prejudicial because it denied the District Attorney's access to relevant evidence and because it prevented the Grand Jury from acting more expeditiously.

Pharaon next points to the decision of Administrative Law Judge Alprin, which refused to stay these depositions. However, Judge Alprin's decision does not order a date for the depositions of Lodhi, Helmy and Saubolle; rather, Judge Alprin's decision relies on the deposition schedule established as a part of the instant proceeding. *See In re Pharaon, supra,* slip op. at 4 ("but for four persons or entities *currently involved in discovery in a proceeding in a Federal District Court for the Southern District of New York,* being Abol Helmy, Louis E. Saubolle, Amer Lodhi and the Bank of Boston, ... depositions and discovery shall not begin until at least January 6, 1992") (emphasis added).

Moreover, the Court cannot join in Judge Alprin's holding that no law enforcement privilege applies to the case at bar. Although the Federal Rules of Civil and Criminal Procedure and the Freedom of Information Act, 5 U.S.C. § 552, do not explicitly provide for a stay of depositions in a civil case pending resolution of criminal proceedings, the case-law cited above clearly provides for such a stay. This Court respectfully declines to join in Judge Alprin's rejection of the law enforcement privilege as it relates to the instant case. In addition, although Judge Alprin's Opinion suggests that the District Attorney was represented at the Scheduling Conference in *In re Pharaon, supra,* slip op. at 6–7, both the District Attorney and the Federal Reserve strenuously insist that the District Attorney was not represented in the earlier proceeding. *See* Transcript, at 13, 33.

### 2. *Other Factors*

██ Pharaon next asserts, quite correctly, that the Court must consider the hardship to the defendant in deciding whether a stay of discovery is appropriate. *See Banco Cafetero, supra,* 107 F.R.D. at 366–67. The Court is, of course, fully aware that Pharaon's assets have been frozen since September by the TRO. However, Pharaon can move the Court to dissolve the TRO under Fed.R.Civ.P. 60(b) and 65(b), giving the Court the opportunity to conduct an evidentiary hearing and to make findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). *See Tekkno Laboratories, Inc. v. Perales,* 933 F.2d 1093, 1097 (2d Cir.1991).

██ The fact that Pharaon runs a considerable risk in the instant proceedings does not tip the balance of hardships in his favor. As the Second Circuit's recent decision in *United States v. Eng,* 951 F.2d 461, 464 (2d Cir.1991), makes clear, under the disentitlement doctrine, "a fugitive from justice may not use the resources of the civil legal system while disregarding its lawful orders in a related criminal action." The application of the disentitlement doc-

trine is severe, "operat[ing] as a waiver by a fugitive of his due process rights in related civil forfeiture proceedings." *Id.* at 466. The Court expresses no opinion on the impact of the disentitlement doctrine in the instant case without the issue having been raised or briefed by the parties. However, it is clear that Pharaon has been indicted by a Grand Jury, and that he has not surrendered in the face of the bench warrant that has been issued for his arrest, which makes him a fugitive.

Upon balancing the interests discussed above, the Court finds that a stay of the non-party depositions in the instant case is proper. The District Attorney has persuasively argued that a delay in the depositions will preserve the secrecy of the Grand Jury proceedings and ensure that relevant evidence is not disclosed prematurely. In fact, Pharaon has himself contributed to the delay in the Grand Jury's decision on whether or not to indict him, by procuring the English Injunction. Moreover, Pharaon's absence from the jurisdiction does not weigh in his favor when the Court balances the hardships in the instant case. The Court thus stays the depositions of Lodhi, Helmy and Saubolle until January 23, 1992.[3] Pharaon's application to compel Lodhi's deposition is granted only to the extent that a subpoena can be issued, noticing a deposition of Lodhi on January 24, 1992.

## C. *Pharaon Application for Costs and Contempt Order*

■■■ The Court next turns to Pharaon's application for costs and for a contempt order. Fed.R.Civ.P. 37(a)(4) provides for an award of costs against a party or attorney whose conduct necessitates a discovery motion, "unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." The

purposes of Rule 37 sanctions are to "ensure that a party will not be able to profit from its own failure to comply[,] ... to secure compliance with the particular order at hand.... [and for] the general deterrent effect ... orders may have." *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979). District judges have broad discretion in deciding whether Rule 37(a)(4) sanctions are appropriate. *Corporation of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 36 (2d Cir.1987).

In the case at bar, there has been no showing that an imposition of costs on Lodhi would be proper. Lodhi's deposition was stayed by an Order of this Court before the deposition was to take place; thus, Lodhi did not act improperly in absenting himself from the deposition scheduled for December 5. *Cf. Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1363–1364 (2d Cir.1991) (violation of subpoena issued by Clerk of Court does not justify imposing Rule 37(b)(2) sanctions because "there must be a valid court order in force before sanctions may be imposed"). Moreover, it is the District Attorney, and not Lodhi, that is objecting to the deposition. In these circumstances, an award of costs would clearly be unjustified.

■■■ The Court also rejects Pharaon's application for an order of contempt, in the event that the Court orders Lodhi to be deposed and he fails to appear. Under Fed.R.Civ.P. 45(e), contempt is a proper remedy for noncompliance with a subpoena. *But see Daval Steel Products, supra*, 951 F.2d at 1364 (quoting *Waste Conversion, Inc. v. Rollins Envtl. Servs. (NJ) Inc.*, 893 F.2d 605, 608 (3d Cir.1990) (en banc)) ("Undeniably, a valid subpoena is a legal instrument.... Nonetheless '[a] subpoena, obtainable as of course from the Clerk of the Court, is not of the same order

3. A number of additional considerations support this result. Although not dispositive, the Court finds merit in the Federal Reserve's argument that the testimony of Pharaon is more important than any other testimony in this case, and that Lodhi's deposition should be scheduled after Pharaon's proposed January 6, 1992 deposition. Moreover, scheduling Lodhi's deposition in late January 1992 would minimize the disruption to his schedule and provide him with an opportunity to consult with counsel after returning to the United States in the regular course of business.

as one issued by a judicial officer....' "). However, Lodhi need not appear for a deposition until January 24, 1992. The Court therefore finds that the application for a contempt order is premature.

## CONCLUSION

For the foregoing reasons, the application of the District Attorney to intervene and to stay the depositions of Amer Lodhi, Abol Helmy and Louis Saubolle until January 23, 1992 is granted. The application of defendant Ghaith Pharaon to compel Lodhi's deposition is granted only to the extent that a deposition of Lodhi can be noticed for January 24, 1992. Pharaon's application for costs and for a contempt order hereby is denied.

SO ORDERED.