952 F.2d 1398
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Elsa I. CARMICHAEL, Barry W. Wilson, Geoffrey Wilson, et
al., Plaintiffs-Appellants,
v.
BASLER TURBO CONVERSIONS, INCORPORATED, Basler Flight
Services, Incorporated, Warren Basler, et al.,
Defendants-Appellees.
 No. 91-3278.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 11, 1991.
Decided Jan. 24, 1992.
 
 Before FLAUM and RIPPLE, Circuit Judges, and HUBERT L. WILL, Senior District Judge*.
 ORDER
 This case is before us on appeal from a denial of a preliminary injunction. For the following reasons, we vacate the judgment and remand the case to the district court.
 I. Background
 On the basis of the record before us, it appears that the parties went into business together to convert DC-3 aircraft into modern turboprop planes. They formed two corporations: Basler Turbo Conversions, Inc. (BTC), which was to develop the needed technology and manufacture "kits" for the conversion of the airplanes; and Innovair Aviation Limited (Innovair), which, under a licensing agreement with BTC, was to have exclusive foreign rights to manufacture kits and convert aircraft and exclusive foreign sales rights except for certain sales involving the U.S. government. BTC is owned 51% by defendants and 49% by plaintiffs, while Innovair is owned 51% by plaintiffs and 49% by defendants. A third corporation, Basler Flight Service, owned wholly by the defendants, had a licensing agreement with BTC which granted it exclusive distribution rights in the United States and rights to certain foreign sales negotiated through the United States government. The parties became embroiled in quarrels and lawsuits. In the midst of these suits, the plaintiffs asked the district court for a preliminary injunction for specific enforcement of an agreement between BTC and Innovair which required BTC to provide to Innovair the technological information relating to conversion of the airplanes.
 II. District Court Proceedings
 After Innovair moved for a preliminary injunction, the district court issued an order scheduling a hearing for September 11, 1991. Each side had forty-five minutes to make their presentation. If either side wished to present live testimony, it was required to serve upon the opposing party and file with the court a list of witnesses and the anticipated testimony. The district court also directed counsel to file a statement of uncontested facts. App. at 84-85. (Statement of uncontested facts, App. at 86).
 At the hearing, no live testimony was taken. The parties had filed numerous, conflicting affidavits, documents and correspondence. Several affidavits were filed the day before the hearing. After the parties made their forty-five minute presentations, the district court orally denied the preliminary injunction, stating that on the basis of the information before it, it could not find that "Innovair ha[d] a substantial probability of success" or that "there [was] any evidence that there isn't an adequate remedy at law." Blue App. at 105. A brief written order was issued the same day.
 III. Analysis
 A. Standard for granting or denying preliminary injunction
 "[T]he district court must consider a number of factors in deciding whether to grant a preliminary injunction: 'Before a preliminary injunction will issue, the movant must show, as a threshold matter, that: (1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not granted; and (3) they have some likelihood of success on the merits in the sense that their "chances are better than negligible." ' " National People's Action v. Village of Wilmette, 914 F.2d 1008, 1010 (7th Cir.1990) (quoting Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386-87 (7th Cir.1984), cert. denied, 111 S.Ct. 1311) (1991). "If the movant can meet this threshold burden, the inquiry then becomes a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits." Id. at 1011.
 "During the course of deciding whether to grant the motion the district court must take a number of non-discretionary actions: (1) it must evaluate the traditional factors enunciated in the case law; (2) it must make factual determinations on the basis of a fair interpretation of the evidence before the court; and (3) it must draw legal conclusions in accord with a principled application of the law." Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1436 (7th Cir.1986). Once the district court has accomplished these non-discretionary tasks, it must make a "classic discretionary decision" "involving how much weight to give individual components of the calculus and to what direction the balance of equity tips." Id.
 B. Standard for review
 A district court's determination to grant or deny a preliminary injunction is reviewed under an abuse of discussion standard. However, the standard is "tailored to the various functions that the district court must perform in fulfillment of its responsibilities." National People's Action, 914 F.2d at 1011 (quoting Thornton v. Barnes, 890 F.2d 1380, 1384 (7th Cir.1989). Appellate review "var[ies] with the nature of the lower court decision." "When a court of appeals considers a preliminary injunction order, which should set forth the judge's reasoning under Fed.R.Civ.P. 65(d), the factual determinations are reviewed under a clearly erroneous standard and the necessary legal conclusions are given de novo review." Lawson, 782 F.2d at 1437. "[T]he ultimate evaluation and balancing of the equitable factors is a highly discretionary decision and one to which this court must give substantial deference." Id. In the absence of an error of law or a clearly erroneous factual determination, "the district judge's weighing of the equities should be disturbed on appeal only in the rarest of cases." Id. However, "[c]learly, a factual or legal error may alone be sufficient to establish that the court 'abused its discretion' in making its final determination." Id.
 As we noted in discussing the abuse of discretion standard in the context of Rule 11, " '[r]eview under the abuse of discretion standard does not mean no appellate review.... [J]udges should always reflect seriously upon the nuances of the particular case....' " Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 936 (7th Cir.1989) (quoting in re Ronco, Inc., 838 F.2d 212, 217-18 (7th Cir.1988). "Until discretion has been taken seriously in the district court and exercised conscientiously, the basis for deference is missing." Id. In reviewing the grant or denial of a preliminary injunction, we have "an obligation under Rule 52(a) to engage in a comprehensive review of the documentary evidence to determine if clear error has been committed." Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1439 (7th Cir.1986) (citing Anderson v. City of Bessemer City, 470 U.S. 564, 581 (1985) (Powell, J., concurring)). "Thus, the appellate role is not to rubber stamp the lower court's determination." Lawson, 782 F.2d at 1440.
 
 
 1
 The present case presents several problems. First, in assessing the movant's likelihood of success on the merits, the district court used a standard of substantial likelihood. As noted above, this circuit has determined that the proper standard is "some" likelihood of success on the merits, which means merely a "more than negligible" chance of winning the lawsuit. In orally denying the injunction from the bench, the district court twice stated that the standard it applied was one of substantial likelihood of success. In the brief written order, issued the same day, the district court used the phrase a "reasonable likelihood of success," but gave no indication that it had reassessed the movant's chances of success under a different standard from that announced initially.
 
 
 2
 The use of an erroneous legal standard in evaluating the movant's chances of likelihood of success on the merits may in itself constitute an abuse of discretion. American Can Co. v. Mansukhani, 742 F.2d 314, 326 (7th Cir.1984); Lawson, 782 F.2d at 1437 (quoting Zepeda v. INS, 753 F.2d 719, 724 (9th Cir.1983). However, if the district court had found, without clearly erroneous factual determinations or other legal error, an absence of the other factors a movant for preliminary injunction must show, we would uphold his denial of the preliminary injunction in spite of the error. See Cox v. City of Chicago, 868 F.2d 217 (7th Cir.1989) ("If a plaintiff fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied.") But in evaluating the district court's determinations on the other factors required for a preliminary injunction, we are faced with a different problem--the very scanty factual findings made by the district court. Even given the highly discretionary nature of the district court's decision to grant or deny a preliminary injunction, and the limited scope of our review, we find it impossible to perform the task assigned to us.
 
 
 3
 Rule 52(a) of the Federal Rules of Civil Procedure provides that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed.R.Civ.Pro. 52(a). This setting forth of findings of fact and conclusions of law is of crucial importance to our ability to review the grant or denial of a preliminary injunction. See Tekkno Laboratories, Inc. v. Perales, 933 F.2d 1093, 1097 (2d Cir.1991). As the Supreme Court stated in Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316 (1940), "[i]t is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure." "Explicit findings of fact upon which the conclusion of the court was based" "are obviously necessary to the intelligent and orderly presentation and proper disposition of an appeal." Mayo, 309 U.S. at 317. The findings required to support the grant or denial of a preliminary injunction must be "sufficiently comprehensive and pertinent to the issue to form a basis for the decision." Conair v. Automatik Apparate-Maschinenbau, 944 F.2d 862, 866 (Fed.Cir.1991) (quoting Oakley, Inc. v. International Tropic-Cal, Inc., 923 F.2d 167, 168 (Fed.Cir.1991). "Otherwise this court cannot conduct a meaningful review and the injunction must be vacated." Id. (citing Pretty Punch Shoppettes, Inc., 844 F.2d 782, 784-85 (Fed.Cir.1988)); "Failure to provide adequate findings is an error of law." Id.
 
 
 4
 As the Fifth Circuit has pointed out, Rule 52(a) does not state expressly "whether the court's findings must be 'extensive,' or whether a 'sketchy pronouncement' will suffice." Rex Oil, Ltd. v. M/V Jacinth, 873 F.2d 82, 87 (5th Cir.1989). Yet a consensus among the circuits clearly exists. "[T]he trial court need only make brief, definite, pertinent findings and conclusions on the contested matters." United States v. Forness, 125 F.2d 928 (2d cir. 1942), cert. denied, 316 U.S. 694 (1942) (quoted by Rex Oil, 873 F.2d at 87-88). There is "no necessity for over-elaboration of detail or particularization of facts." Id.; see also Rex Oil, 873 F.2d at 87-88. Moreover, as the Second Circuit has held, "we may proceed with our review despite inadequate findings if we 'can discern enough solid facts from the record to enable us to render a decision.' " Tekkno Laboratories, Inc. v. Perales, 933 F.2d 1093 (2d Cir.1991) (citations omitted). However, "we will normally vacate the order if the findings and the record are not sufficient to enable us to be sure of the basis of the decision below." Id. In short, while what is sufficient will vary from case to case, the findings of the district court must be sufficient for our review.
 
 
 5
 In the present case, the district court orally denied the preliminary injunction, stating that "[t]here actually are so many side issues here that defy resolution on the basis of affidavits, and I suspect may defy resolution up to the time of trial. But, in any event, I cannot find on the basis of the information before me that Innovair has a substantial probability of success." On the issue of whether there was an adequate remedy at law, the court stated, "I might also point out that it seems to me that it's going to be necessary through the discovery process to sort out the various claims and find out which have a sound foundation and which don't. And until that is done, I can't find that there is any evidence that there isn't an adequate remedy at law here with, as counsel points out, the parties owning substantial minority interests in each other's companies." Appellants' App. at 105. No further factual findings in regard to these issues were provided by the court in its written order. This state of the record leaves us in a dilemma not unlike that which confronted the Federal Circuit in Pretty Punch Shoppettes, Inc. v. Hauk, 844 F.2d 782, 784 (Fed.Cir.1988):
 
 
 6
 In denying the preliminary injunction, the trial court stated that it was "not convinced as to the probability of [Pretty Punch] prevailing on the merits" ... because there were "too many issues of fact yet to be determined." These statements represent the extent of the trial court's findings, and do not explain why Pretty Punch had not established a reasonable likelihood of success on the issue of infringement. Pretty Punch's expert testified in detail why Hauk's needle infringed the claims of the '445 patent; both sides briefed the infringement issue, yet the trial court provided this court with no guidance as to why and how it arrived at its conclusion. We have no basis for evaluating what facts entered into the trial court's infringement analysis, or if that analysis comports with the standards articulated by this court.
 
 
 7
 The present case concerns a complex business arrangement; it requires a more detailed factual analysis than some. We give a summary of some of the claims and allegations involved. In their original complaint, the plaintiffs alleged that, as directors and officers of BTC, the defendants had acted improperly to benefit BFS, which is wholly owned by the defendants, to the detriment of BTC, which is owned 51% by defendants and 49% by plaintiffs. The plaintiffs asserted a shareholder derivative claim, as well as claims for breach of fiduciary duty against defendants Warren and Patricia Basler, for breach of contract against BFS, conspiracy, corporate dissolution, and a pattern of fraudulent conduct in violation of Wis.Stat. § 946.83. Later, the plaintiffs asked BTC to provide technological information under a technology licensing agreement between BTC and Innovair and received in reply a notification that the agreement was terminated. They then moved to amend their complaint to include a claim for breach of the licensing agreement and at the same time moved for a preliminary injunction to compel BTC to perform under the agreement.[1]
 
 
 8
 In support of their motion for a preliminary injunction, the plaintiffs argued before the district court that the terms of the agreement clearly obligated the defendants to turn over the technology, and that they themselves had performed their side of the agreement (payment of $1,675,000). In addition, the plaintiffs contended that they were without an adequate remedy at law and that, if the injunction were not granted, they would suffer irreparable harm because without the technology they would soon be out of business. The defendants disputed the allegation that plaintiffs had paid in full for the technology,[2] and argued that they had lawfully terminated the technology agreement because the plaintiffs had not acted in good faith[3] and had not used their best efforts to sell kits and conversions. The defendants also disputed the plaintiffs' claim that they would suffer irreparable harm and asserted that, if the injunction issued, their own harm (dissemination of their trade secrets) would be the greater harm. These and other issues were presented to the district court in the parties' briefs, affidavits and oral presentations, but remain unresolved.
 
 
 9
 We emphasize that we do not signal any displeasure with the result reached by the district court. We simply are unable to review its determination without further specific findings. We therefore vacate the district court's denial of the preliminary injunction and remand to the district court for further proceedings in accordance with this opinion. The district court may, in its discretion, determine that a more extensive hearing is required before the entry of more detailed findings.
 
 
 10
 Accordingly, the judgment of the district court is vacated and the case is remanded for proceedings consistent with this opinion. Each party shall bear its own costs in this Court.
 
 
 
 [1]
 At the same time it denied the preliminary injunction, the district court gave the plaintiffs permission to amend their complaint. They have now done so, and the defendants have counterclaimed, seeking an injunction against the plaintiffs enjoining them from "conspiring with or directing others to misappropriate, destroy, disclose or use BTC's trade secrets;" An earlier case brought by BTC against Elsa Carmichael and Barry Wilson has been consolidated with the present case. In that case, which was originally brought in Wisconsin state court, BTC sought a declaratory judgment that there were no grounds for a judicial dissolution of Basler Turbo pursuant to Wis.Stat. § 180.1430(2). In addition to these suits between the parties, there is a suit pending in federal court in Arizona concerning the federal government's seizure of the technology license for the airplane conversions, and a suit brought by BTC against several former employees for theft of trade secrets
 
 
 [2]
 Although the defendants contended in district court that they had not been paid in full for the technology, they have not pressed this argument before this court
 
 
 [3]
 The claim that the plaintiffs had not acted in good faith rested upon allegations of theft of trade secrets