948 F.2d 84
 35 Soc.Sec.Rep.Ser. 409, Medicare & Medicaid Guide
P 39,672,
2 NDLR P 133
 YORKTOWN MEDICAL LABORATORY, INC., Plaintiff-Appellant,
v.
Cesar A. PERALES, Commissioner of the New York State
Department of Social Services, and the New York
State Department of Social Services,
Defendants-Appellees.
 No. 122, Docket 91-7447.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 26, 1991.
Decided Oct. 28, 1991.
 
 Daniel J. Pykett, White Plains (Aronwald & Pykett, of counsel), for plaintiff-appellant.
 Robert A. Forte, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Lawrence S. Kahn, Deputy Sol. Gen., Carol Schechter, Charles Davis, Barbara B. Butler, Litigation Bureau, of counsel), for defendants-appellees.
 Before OAKES, Chief Judge, FEINBERG and CARDAMONE, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 Yorktown Medical Laboratory, Inc. ("Yorktown"), a Medicaid provider, brought an action pursuant to 42 U.S.C. § 1983 against the New York State Department of Social Services ("DSS") and the DSS Commissioner, Cesar A. Perales, alleging that DSS's withholding of payment for claims constituted a violation of the Due Process Clause of the Fourteenth Amendment. The defendants filed a summary judgment motion arguing that the plaintiff had failed to demonstrate a constitutionally protected property interest, the Eleventh Amendment barred recovery, and the Commissioner was protected by qualified immunity. Chief Judge Charles L. Brieant of the United States District Court for the Southern District of New York granted the motion on the grounds that Yorktown had not established that it had a constitutionally protected property interest.
 
 
 2
 On appeal, Yorktown contends that (1) it has a constitutionally protected property interest in payment for services rendered; (2) the statistical sampling techniques employed by DSS for calculating overcharging in Yorktown's Medicaid claims violated its rights under the Due Process Clause; and (3) the delays in according it a post-deprivation hearing violated its due process rights. We affirm the district court ruling for the following reasons. To the extent that Yorktown's suit is against DSS and Commissioner Perales in his official capacity, we find, as we did in Tekkno Laboratories, Inc. v. Perales, 933 F.2d 1093, 1097-98 (2d Cir.1991), that the Eleventh Amendment bars the federal courts from granting a retroactive award to a Medicaid provider that requires payment from the state treasury. To the extent that this suit seeks to impose personal liability on Cesar A. Perales, we find, as did the district court, that Yorktown has failed to establish that it had a cognizable property interest.
 
 I. BACKGROUND
 
 3
 Yorktown, a clinical laboratory, served as a Medicaid provider until May 1988. In a March 4, 1986 letter, DSS informed Yorktown that payment for current and future claims would be withheld pending an investigation and verification of past claims. Yorktown inquired as to the basis of the investigation; and, in a May 20, 1986 letter, DSS replied that evidence existed that Yorktown had misused Medicaid billing codes.
 
 
 4
 On June 10, 1986, DSS issued interim findings based on an audit of Yorktown's books for January 1, 1983 to December 31, 1985. DSS selected a random sample of 100 recipients of Yorktown's testing, from which 1,290 claims arose totaling $24,751. Of these claims, DSS found fault with 498 for a total of $20,655 in overcharges. Extrapolating from the sample to the total number of claims for the audited period, DSS calculated that Yorktown owed Medicaid $2,175,591. Yorktown was informed of DSS's findings and provided with an opportunity to rebut them.
 
 
 5
 On July 17, 1986, DSS issued a Notice of Proposed Agency Action to inform Yorktown that it had engaged in unacceptable practices, as specified by 18 N.Y.C.R.R. § 515.2, including abuse of billing codes, billing for tests provided by another laboratory, and engaging in unnecessary and unlicensed procedures. The notice further informed Yorktown of DSS's intent to seek restitution, to disqualify Yorktown from participation in the Medicaid program, as permitted by 18 N.Y.C.R.R. § 515.3, and, under 18 N.Y.C.R.R. § 515.7, to withhold payment for claims pending final determination of the action. Yorktown challenged these findings. In response, DSS reviewed its audits and, on November 10, 1986, sought additional information from Yorktown. Plaintiff did not produce the requested information until the administrative hearing in 1990.
 
 
 6
 On April 11, 1988, DSS, having completed its review, issued its Notice of Final Agency Action--exclusion of Yorktown from the Medicaid program and a revised restitution sum of $1,893,096. Yorktown requested an administrative hearing on May 25, 1988. According to DSS, when the Office of Administrative Hearings attempted to schedule a hearing on July 21, 1988, they were informed that Yorktown intended at that time to pursue other avenues of relief. On May 15, 1989, however, Yorktown renewed its hearing request. After a series of hearing days and post-hearing briefs, on October 17, 1990, the administrative law judge affirmed the DSS Medicaid exclusion decision, but, in response to additional documentation supplied by Yorktown, required DSS to recompute the amount of restitution required. Yorktown, then, commenced this action under section 1983.
 
 II. DISCUSSION
 
 7
 At the outset, this appeal requires us to distinguish between official and individual capacity suits. The distinction hinges upon from whom the plaintiff seeks a remedy. Official capacity suits seek, in all aspects other than the party named as defendant, to impose liability on the government. Personal capacity suits, in contrast, aim to impose liability directly on officials for actions taken under color of state law. Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); Shabazz v. Coughlin, 852 F.2d 697, 700 (2d Cir.1988). Yorktown's suit comprises both official and individual capacity claims.
 
 A. Official Capacity Claims
 
 8
 Official capacity suits brought in federal court against a state, state agencies, or state officials must overcome the immunity accorded the states under the Eleventh Amendment.[1] In an attempt to overcome this hurdle, Yorktown sets forth two arguments. First, Yorktown attempts to recast the relief requested as prospective injunctive relief--the return of property--to which the Eleventh Amendment is no barrier. See Edelman v. Jordan, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). In Tekkno Laboratories, an analogous Medicaid-provider suit, we labeled this argument a specious "attempt[ ] to parry the Eleventh Amendment defense." 933 F.2d at 1098. Yorktown's argument fails, as did Tekkno Laboratories' claim, because it seeks to craft a distinction between monetary damages and money in which plaintiff has a property interest--a distinction irrelevant to Eleventh Amendment analysis. See Edelman, 415 U.S. at 668, 94 S.Ct. at 1358.
 
 
 9
 Second, Yorktown argues that, through participation in the Medicaid program, states have waived their Eleventh Amendment immunity to compensation claims from Medicaid providers. State participation in a federal program, however, does not in itself constitute waiver; rather waiver will be found only if stated in "express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam ) (quoting Edelman, 415 U.S. at 673, 94 S.Ct. at 1361). Yorktown cites to the Boren Amendment to the Medicaid Act in support of its waiver claim.[2] Although the Boren Amendment imposes on the states an obligation to adopt "reasonable and adequate [payment rates] to meet the [providers'] costs," 42 U.S.C. § 1396a(a)(13)(A) (1988); see also Wilder v. Virginia Hosp. Ass'n, --- U.S. ----, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), it does not authorize retroactive suits for the recovery of compensation due.
 
 
 10
 The history of amendments to the Medicaid Act also tends to undermine Yorktown's argument. In 1975, Congress did indeed enact waiver legislation penalizing those states that failed to waive their immunity to damage suits by Medicaid providers. Pub.L. 94-182, § 111, 89 Stat. 1054 (1975). The states opposed the waiver provision and, during the following session, Congress repealed it. Pub.L. 94-552, 90 Stat. 2540 (1976). The legislative history of the waiver repeal indicates that it was intended to return the Medicaid Act to its status quo ante: the Eleventh Amendment once again would bar provider suits for past compensation. See S.Rep. No. 1240, 94th Cong., 2d Sess. 3-4 (1976), reprinted in 1976 U.S.C.C.A.N. 5648, 5649-51; see also Wilder, 110 S.Ct. at 2521-22 & n. 15.[3]
 
 
 11
 In sum, Yorktown's official capacity claims do not fit within one of the exceptions to the Eleventh Amendment immunity accorded states and, thus, these claims are barred.
 
 B. Individual Capacity Claims
 
 12
 The Eleventh Amendment bar, by definition, only applies to official capacity suits.[4] The defendants, however, argue that the individual capacity claims fail for lack of express pleading in the complaint; thus, they argue, all claims against the Commissioner of DSS should be interpreted as official capacity claims barred by the Eleventh Amendment. We have traveled too far in the direction of modern pleading to return to the rigid pleading rules of the past. See, e.g., Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-103, 2 L.Ed.2d 80 (1957). In place of express pleading, we look to the totality of the complaint as well as the course of proceedings to determine whether the defendants were provided with sufficient notice of potential exposure to personal liability.[5] The following aspects of the present case attest to defendants' notice of individual capacity claims: Yorktown's complaint sought punitive damages, which are only available in individual capacity suits, see Smith v. Wade, 461 U.S. 30, 35-36 & n. 5, 103 S.Ct. 1625, 1629-30 & n. 5, 75 L.Ed.2d 632 (1983); Shabazz, 852 F.2d at 700, and defendants claimed qualified immunity, a defense unavailable to officials in their official capacity, Kentucky v. Graham, 473 U.S. at 167, 105 S.Ct. at 3106.
 
 
 13
 Although Yorktown's individual capacity claims survive the Eleventh Amendment bar, they fail for other reasons. Plaintiff's first claim--that the Commissioner denied its due process right to payment for services rendered--fails for lack of a cognizable property interest.[6] Yorktown has not demonstrated a legitimate claim of entitlement to the payments withheld. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58-59 (2d Cir.1985). Property interests in Medicaid payment of the sort necessary to sustain Yorktown's claim must derive from federal or state law. Federal law, however, requires that state Medicaid plans "provide for procedures of prepayment and postpayment claims review, including review of appropriate data with respect to the ... provider of service." 42 U.S.C. § 1396a(a)(37)(B) (1988). In compliance with this requirement, DSS promulgated regulations authorizing it to audit, verify, and withhold payment for claims submitted by Medicaid providers pending a DSS final determination. See 18 N.Y.C.R.R. §§ 515.6, 540.8(a)(1), 540.11 (1988) & § 515.7 (1983) (repealed effective June 6, 1988 and replaced in part by § 518.7 (1988)). Thus, Yorktown has no property interest grounded in either the Medicaid Act or New York regulations to payment for claims pending investigation to determine illegality. See Tekkno Laboratories, 933 F.2d at 1098; see also S & D Maintenance Co. v. Goldin, 844 F.2d 962, 968-70 (2d Cir.1988). But see Tekkno Laboratories, 933 F.2d at 1099-1100 (Oakes, C.J., concurring).
 
 
 14
 DSS, however, may not withhold payment indefinitely without some findings as to unacceptable practices. DSS, in effect, may only refuse to pay for services "for cause." Rockland Medilabs, Inc. v. Perales, 719 F.Supp. 1191, 1199 (S.D.N.Y.1989). If DSS finds an unacceptable practice, it may, among other sanctions, withhold payment or require repayment. 18 N.Y.C.R.R. §§ 515.3, 515.4 (1988). DSS's findings as to Yorktown's abuse of billing codes, performance of unlicensed procedures, and billing for tests provided by another laboratory constitute cause. Thus, Yorktown has no property interest in the withheld payments: to hold otherwise would be to recognize a property interest in services Yorktown knew or should have known contravened state regulations.
 
 
 15
 For Yorktown's due process claims to succeed, it must challenge the findings of unacceptable practices. Yorktown, however, does not contest directly these findings with respect to the sample claims audited by DSS. Instead, Yorktown, in its second and third claims, objects to procedural aspects related to the findings. Yorktown's second claim focuses on the statistical extrapolation by which DSS calculated the amount of overpayment. Plaintiff does not challenge any specific statistical methods--which it had an earlier opportunity to challenge--but objects to any extrapolation from the sample to the entire universe of claims. Such an extrapolation, Yorktown argues, sanctions it for unidentified unacceptable practices--practices which Yorktown has had no opportunity to contest. In essence, Yorktown claims that any determination of overcharges by extrapolation violates its due process rights. Yorktown's claim overlooks the fact that the process due depends on balancing various circumstances and factors.[7] Given the low risk of error and the government interest in minimizing administrative burdens, the balance of interests favors DSS. See Chaves County Home Health Serv. v. Sullivan, 931 F.2d 914, 922-23 (D.C.Cir.1991); Illinois Physicians Union v. Miller, 675 F.2d 151, 156-57 (7th Cir.1982). To rule otherwise would hamstring DSS's attempts to eliminate fraud, without materially advancing Yorktown's interest.
 
 
 16
 Yorktown's third claim asserts that the Commissioner failed to ensure that a prompt post-deprivation hearing was provided. See FDIC v. Mallen, 486 U.S. 230, 241-42, 108 S.Ct. 1780, 1788-89, 100 L.Ed.2d 265 (1988). Even if plaintiff were to establish an entitlement to prompt investigation, its claim would fail, because (as the district court noted) part of the fault for the delay rests with Yorktown. Common sense prevents us from basing a due process violation on a delay for which the plaintiff bears responsibility. Thus, neither of Yorktown's procedural challenges to the findings of unacceptable practices succeed.
 
 
 17
 Because Yorktown's official capacity claims are barred by the Eleventh Amendment and its individual capacity claims fail to establish the cognizable property interest necessary for a due process claim, we affirm the judgment of the district court.
 
 
 18
 Judgment affirmed.
 
 
 
 [1]
 See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2311-12, 105 L.Ed.2d 45 (1989), the Court found that a related barrier governs official capacity section 1983 claims: neither a state nor state officials sued in official capacity for monetary damages are "persons" for the purposes of section 1983
 
 
 [2]
 The Boren Amendment, Pub.L. 96-499, § 962(a), 94 Stat. 2650 (1980), changed the provisions of 42 U.S.C. § 1396a(a)(13) of the Medicaid Act relating to reimbursement of nursing and intermediate care providers. Subsequently, the same standard was made applicable for hospital reimbursement. Pub.L. 97-35, § 2173, 95 Stat. 808 (1981)
 
 
 [3]
 Yorktown intermingles with its waiver argument an additional argument that Congress has abrogated the immunity of states with respect to Medicaid providers. This argument fares no better than the waiver argument. Abrogation only occurs if Congress has made its "intention unmistakably clear in the language of the statute." Dellmuth v. Muth, 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)); see also Pennsylvania v. Union Gas Co., 491 U.S. 1, 13, 109 S.Ct. 2273, 2280, 105 L.Ed.2d 1 (1989). Yorktown points to no provision of the Medicaid Act that evinces the language of abrogation. Nor can Yorktown rely on section 1983 as indicative of express congressional desire to override state sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 338-45, 99 S.Ct. 1139, 1143-47, 59 L.Ed.2d 358 (1979)
 
 
 [4]
 See Kentucky v. Graham, 473 U.S. at 165-67, 105 S.Ct. at 3104-06; Shabazz, 852 F.2d at 700. Similarly, officials sued in their personal capacity are "persons" for the purposes of section 1983, and, thus, are unaffected by Will v. Michigan Dep't of State Police, 491 U.S. at 70-71, 109 S.Ct. at 2311-12. See Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir.1989); see also Melo v. Hafer, 912 F.2d 628, 635 (3d Cir.1990), cert. granted, --- U.S. ----, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991); National Foods, Inc. v. Rubin, 727 F.Supp. 104, 107-08 (S.D.N.Y.1989)
 
 
 [5]
 Kentucky v. Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3104 n. 14 (citing Brandon v. Holt, 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878 (1985)); Shabazz, 852 F.2d at 700; see also Melo, 912 F.2d at 636 n. 7. In contrast, some circuits have opted for a clear statement approach to pleading. See Wells v. Brown, 891 F.2d 591, 593 (6th Cir.1989); Nix v. Norman, 879 F.2d 429, 431 (8th Cir.1989)
 
 
 [6]
 Because plaintiff's claims fail for lack of a constitutionally protected property interest, we need not consider defendants' qualified immunity defense
 
 
 [7]
 See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Mathews prescribed a three-prong analysis and balancing of (1) the private interest affected; (2) the risk of erroneous deprivation of that interest; and (3) the government interest. As applied to extrapolation from a random sample, if an opportunity is provided to rebut the findings with respect to the initial sample, then the risk of erroneous deprivation approaches zero. See generally Friendly, Some Kind of Hearing, 123 U.Pa.L.Rev. 1267, 1295-1304 (1975)