**In the Matter of GUIDING LIGHT CORPORATION d/b/a The Vision of Hope Clinic, Debtor.**

**GUIDING LIGHT CORPORATION d/b/a The Vision of Hope Clinic, Plaintiff,**

v.

**Bobby P. JINDAL, Secretary of The Louisiana Department of Health & Hospitals, Defendant.**

Bankruptcy No. 97–11082.
Adversary No. 97–1049.

United States Bankruptcy Court,
E.D. Louisiana.

March 5, 1998.

Stephen F. Chiccarelli, Breazeale, Sachse & Wilson, Baton Rouge, LA, for Debtor.

Wilbur J. (Bill) Babin, Jr., New Orleans, LA, trustee.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

The parties have filed cross motions for summary judgment.[1] The issues are whether the debtor. Guiding Light Corporation d/b/a The Vision of Hope Clinic ("Guiding Light"), has a property interest in funds withheld by the State of Louisiana through the Department of Health & Hospitals ("LDHH"), and if so, whether Guiding Light may proceed against the Secretary of the LDHH, Bobby P. Jindal, under the *Young* exception. Whether Guiding Light has a property interest in the funds raises a novel legal question as to which there is no jurisprudence on point. The court finds that Guiding Light does not have a property interest in the funds withheld because they were withheld while Guiding Light was being investigated for fraud or willful misrepresentation. In addition, Guiding Light may not proceed under the *Young* exception because the complaint seeks retrospective relief and requests a turnover order of funds from the Louisiana treasury.

### I. Procedural Background

Guiding Light filed its petition for Chapter 11 protection and the pending adversary proceeding on February 28, 1997. The original complaint named the State of Louisiana through the LDHH as the sole defendant. On May 8, 1997, Guiding Light filed an amended complaint, which named Jindal in his capacity as Secretary of LDHH as an additional defendant.[2] The amended complaint prays for a judgment:

(1) Of declaratory relief that the withheld claim payments constitute property of the bankruptcy estate and that Bobby P. Jindal is exercising control of said property in violation of the automatic stay;

---

1. Pl. 40—Guiding Light's motion and Pl. 42—Jindal's motion.

2. Pl. 19.

(2) Requiring immediate turnover of estate property under section 542 of the Bankruptcy Code so that a plan of reorganization may be implemented in accordance with 11 U.S.C. § 1123(a)(5); and

(3) Prospectively enjoining Bobby P. Jindal and any of his officers or employees at LDHH during the pendency of the bankruptcy from exercising control over the previously withheld claim payments or any future payments otherwise properly payable in violation of 11 U.S.C. § 362(a)(3).[3]

By memorandum opinion entered on September 26, 1997, the court dismissed the complaint as to the State of Louisiana because the state had not waived its right to claim sovereign immunity.[4] The court also denied Jindal's motion to dismiss, and held that Guiding Light properly alleged a claim against Jindal under the doctrine set forth in *Ex parte Young*,[5] commonly referred to as the "*Young* exception".

Subsequently, Jindal filed an answer to the amended complaint, and the parties have filed the pending cross motions for summary judgment, both of which assert that judgment is appropriate as a matter of law.

## II. *Facts*

Guiding Light provided medical services under the Louisiana Medical Assistance Program (Medicaid) during the first nine months of 1996 at its clinic located near Algiers, Louisiana.

LDHH operates the Medicaid program in Louisiana. In his official capacity as Secretary of the LDHH, Jindal serves as the sole agent of the state for purposes of operating Medicaid within Louisiana.[6]

LDHH engaged in postpayment review of Guiding Light's reimbursement invoices, which resulted in the LDHH deciding to withhold temporarily payments to Guiding Light. On September 18, 1996, the LDHH, through its Surveillance and Utilization Review Section (SURS), sent Guiding Light a letter informing it that payments were to be temporarily withheld, and advising it of certain administrative remedies available to Guiding Light.[7] The letter stated the payments were being withheld because of "receipt of reliable evidence that involve fraud or willful misrepresentation [on the part of Guiding Light]."[8]

The LDHH withheld four claim payments from Guiding Light: (1) $19,962.73 on September 17, 1996; (2) $22,571.60 on September 24, 1996; (3) $6,901.17 on October 1, 1996; and (4) $11,002.28 on October 15, 1996.[9] The total amount withheld is $59,627.78. All four payment checks are drawn on the Louisiana State Treasury.

On September 25, 1996, the Guiding Light clinic closed its doors and discontinued operations. Guiding Light has not submitted any claims to the LDHH since October 15, 1996.

On February 28, 1997, Guiding Light filed for Chapter 11 bankruptcy protection. LDHH has not filed a proof of claim or taken any other action in the bankruptcy proceedings that could be construed as a waiver of its Eleventh Amendment immunity.

## III. *Analysis*

### A. *Standard for motion for summary judgment*

Summary judgment shall be rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."[10] The facts of this case are not disputed. Therefore, the court need make only a determination of law.

### B. *Guiding Light's property interest in the claim payments*

Guiding Light asserts that the funds withheld by the LDHH are property of the bankruptcy estate that are subject to turnover

3. *Id.* at 3.

4. *In re Guiding Light Corp.*, 213 B.R. 489 (Bankr. E.D.La.1997).

5. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

6. *See* La.R.S. 36:254A(6).

7. Pl. 46—Defendant's Exhibits—Ex. 5.

8. *Id.*

9. *Id.*

10. Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); *FDIC v. Lee*, 130 F.3d 1139, 1140–41 (5th Cir. 1997).

under 11 U.S.C. § 542. Jindal contends that the funds are not part of the bankruptcy estate.

Guiding Light cites several cases for the proposition that funds withheld by state or federal agencies are subject to turnover. In the seminal case of *United States v. Whiting Pools*,[11] the IRS seized property to satisfy a tax lien, whereupon the debtor filed for reorganization under the old Bankruptcy Act. The debtor then initiated a turnover complaint. The Supreme Court ultimately held that the debtor's reorganization estate included the property that had been seized by the IRS prepetition. The Supreme Court held that although the IRS's tax lien did not dissolve, the IRS was required to seek protection of its interests according to the established bankruptcy procedures, rather than by continuing to withhold the seized property.[12]

Guiding Light also refers to the case of *In re Operation Open City, Inc.*,[13] in which the debtor entered into a contract with the state of New York to provide weatherization services to eligible apartment buildings. The contract included a setoff provision that permitted the state to withhold payments owed under the contract against any amounts owed by the debtor. As of the petition date, the state owed approximately $242,210 to the debtor. Thereafter, the state sent the debtor a check for $57,506 as "full and final payment." The holdback resulted in a setoff of approximately $184,700. Under New York law, the funds were to be held in a constructive trust for the benefit of unpaid subcontractors. The creditors' committee brought a turnover action against the state to recover funds due the debtor, but withheld under the setoff provision. The bankruptcy court ordered turnover of the funds, finding that the retained funds were property of the estate, and that retention of the funds represented a violation of the automatic stay. The district court affirmed, reasoning that taking a setoff without first requesting relief from the automatic stay constituted a waiver of

the state's Eleventh Amendment immunity. The district court further held that although the funds were not property of the debtor under state law, the debtor had more than a minor interest in the funds, which under state law were held in constructive trust for the benefit of third parties. The district court concluded that distribution of the funds outside the bankruptcy priority scheme and without court authority ran afoul of Section 362.

Guiding Light contends that there is no meaningful distinction between an improper setoff through retention of approximately 80% of monies owed, and the retention here of 100% of funds in contravention of the orderly distribution of estate assets mandated by the Bankruptcy Code.

The court disagrees. In *Open City*, the state made the setoff after the bankruptcy filing, and without first seeking relief from the automatic stay from the bankruptcy court, which the court deemed a waiver of the Eleventh Amendment immunity. By contrast, the action by the LDHH in asserting control over the property occurred prepetition, and there is no waiver of sovereign immunity. *Open City* does not answer, the question of whether Guiding Light has a property interest in the funds withheld by the LDHH. Similarly, in *Whiting Pools*, there was no doubt that the property that was seized by the IRS was the debtor's property, and that the IRS only had a secured interest in the property.

The nature and extent of a debtor's interest in property is determined by the applicable state or federal substantive law.[14] Once the determination of the debtor's interest in property is made, federal bankruptcy law dictates to what extent that interest is property of the estate.[15] Section 541 of the Bankruptcy Code broadly defines the bankruptcy estate to include, with certain exceptions: ": . . all legal or equitable interests of the debtor in property as of the commence-

11. 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983).

12. *Id.*, 462 U.S. at 211–12, 103 S.Ct. at 2317.

13. 170 B.R. 818 (S.D.N.Y.1994).

14. *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1172 (6th Cir.1990); *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84. 89 (2nd Cir.1991).

15. *Id.*

ment of the case." [16] The estate's interest in property, however, can rise no higher than that of the debtor's interest in the property.[17]

■ The LDHH argues that Guiding Light had no property interest in the funds being withheld at the time it filed its petition, pending the investigation by the LDHH to determine the validity of the claims. In support of its position, the LDHH cites the case of *Yorktown Medical Laboratory, Inc. v. Perales.*[18]

*Yorktown* is not a bankruptcy case, but involves the withholding of Medicaid payments. In *Yorktown,* a Medicaid provider sued the New York State Department of Social Services ("DSS") and its Commissioner alleging that withholding of payment for claims under the Medicaid program constituted a violation of the due process clause of the Fourteenth Amendment. The Second Circuit affirmed the district court's holding that the suit against the DSS was barred by the Eleventh Amendment. With respect to the individual claim against the Commissioner, the Second Circuit held that Yorktown had failed to prove a cognizable property interest because Yorktown had not demonstrated a legitimate claim of entitlement to the payments withheld. The court reasoned:

> Property interests in Medicaid payment of the sort necessary to sustain Yorktown's claim must derive from federal or state law. Federal law, however, requires that state Medicaid plans "provide for procedures of prepayment and postpayment claims review, including review of appropriate data with respect to the . . . provider of service." 42 U.S.C. § 1396a(a)(37)(B) (1988). In compliance with this requirement. DSS promulgated regulations authorizing it to audit, verify, and withhold payment for claims submitted by Medicaid providers pending a DSS final determination. [citation omitted]. Thus, Yorktown has no property interest grounded in either the Medicaid Act or New York regulations to payment for claims pending in-

vestigation to determine illegality. *See Tekkno Laboratories, Inc. v. Perales,* 933 F.2d 1093, 1098; *see also S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 968–70 (2nd Cir.1988). *But see Tekkno Laboratories,* 933 F.2d at 1099–1100 (Oakes, C.J., concurring).[19]

The LDHH argues that it too has promulgated regulations authorizing it to withhold payments for claims submitted by a Medicaid provider pending a final determination by LDHH as to whether or not payment should be made. Thus, it asserts that because the payments due were withheld because of suspicion of fraud or willful misrepresentation by Guiding Light, under the precepts of *Yorktown,* Guiding Light has no property interest in the payments.

A review of the case of *Tekkno Laboratories, Inc. v. Perales,*[20] relied upon by the *Yorktown* court is helpful to the court's analysis. In *Tekkno Laboratories,* a Medicaid provider brought an action against the Commissioner of the Department of Social Services for the State of New York under 42 U.S .C. § 1983, contending that the State's withholding of payment of claims for services previously provided constituted a deprivation of property without due process of law. The district court issued a preliminary injunction prohibiting the withholding of payment of claims. The Second Circuit reversed the preliminary injunction on two grounds. The court first found that the district court had no jurisdiction to grant the relief in light of the Eleventh Amendment. The court also disagreed with the district court's holding that Tekkno had a constitutionally protected property interest in reimbursement of the Medicaid services. The court distinguished two cases relied upon by the district court, and noted that neither of the cases involved the state withholding payments pending an investigation to determine illegality. Chief Judge Oakes concurred in the results, but cited with approval the district court's finding that a provider has a constitutionally

---

16. 11 U.S.C. § 541(a)(1).

17. *First Fidelity Bank v. McAteer,* 985 F.2d 114, 117 (3rd Cir.1993).

18. 948 F.2d at 89.

19. *Yorktown,* 948 F.2d at 89 (footnotes omitted).

20. 933 F.2d 1093 (2nd Cir.1991).

protected property interest in reimbursement for Medicaid services already performed.

Thus, *Yorktown* and *Tekkno Laboratories* found that withholding by the state of payments to a Medicaid provider pending a review based on alleged illegality does not constitute a deprivation of property without due process of law. On the other hand, the concurring opinion of Chief Judge Oakes in *Tekkno Laboratories* found that a provider has a constitutionally protected property interest in reimbursement for Medicaid services already performed.

This court, of course, is not bound by the Second Circuit's opinions in *Yorktown* and *Tekkno*. The Fifth Circuit has not addressed the issue of whether a provider has a constitutionally protected property interest in payment for Medicaid services performed while the provider is being investigated for fraud. The closest Fifth Circuit opinion found by the court, *Smith v. North Louisiana Medical Review Ass'n,*[21] involved a "waiver of liability" presumption, which presumed a lack of knowledge of noncoverage by the beneficiary and health provider. The *Smith* court found that the waiver of liability presumption is not a constitutionally protected property interest because "a provider has no reasonable expectation or entitlement to be paid on a bad claim".[22]

Although *Yorktown, Tekkno Laboratories,* and *Smith* are not bankruptcy cases, they do address the issue of what constitutes an interest in property with respect to deprivation of constitutional rights claims, and are of assistance in analyzing the pending bankruptcy case. Although it is true that Section 541 of the Bankruptcy Code defines "property" broadly, as previously discussed, the estate's interest in property can rise no higher than that of the debtor's interest in property.[23] Guiding Light's arguments do not persuade the court that it has any property interest in the funds. The court is persuaded by the majority holding of *Yorktown* and *Tekkno* that a medical care provider does not have a property interest in Medicaid payments for claims pending investigation for fraud or willful misrepresentation. Therefore, the broad definition of property under the Bankruptcy Code does not come into play.

In conclusion, the court finds that Guiding Light does not have a property interest under the Bankruptcy Code in the funds pending the investigation for fraud or willful misrepresentation by the LDHH. This is a narrow holding and limited to the facts of this case only: Guiding Light has no property interest in the funds withheld because the LDHH is withholding the funds due to receipt of "reliable evidence" that involves fraud or willful misrepresentation on the part of Guiding Light.

### C. *Prospective relief*

■ Even assuming, however, that Guiding Light has a property interest in the funds because it has already performed the services, the court is still unable to give Guiding Light the relief it seeks.

It is clear that a Medicaid provider has no property interest in future reimbursements.[24] The court has already dismissed the LDHH as a defendant because of its sovereign immunity under the Eleventh Amendment. The court allowed Guiding Light's amended complaint to go forward against Jindal under the *Young* exception.[25] The *Young* exception permits a suit to proceed against a state official, where the state itself could not be sued, when the suit seeks only prospective injunctive relief in order to end a continuing violation of federal law.[26]

■ The relief sought by Guiding Light— a turnover order under Section 542 of the Bankruptcy Code—however denominated or

**21.** 735 F.2d 168 (5th Cir.1984).

**22.** *Smith,* 735 F.2d at 173.

**23.** *Supra,* at 6–7.

**24.** *Oberlander v. Perales,* 740 F.2d 116 (2nd Cir. 1984).

**25.** *In re Guiding Light,* 213 B.R. at 492.

**26.** *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

labeled, is actually retrospective relief. Guiding Light has not submitted any claims to the LDHH since October 15, 1996. The LDHH withholding was instituted prior to the bankruptcy filing on February 28, 1997. The LDHH has not made any post-petition claims or attempted or requested any post-petition recoupments or setoffs. While the *Young* exception does provide for prospective relief, it does not permit a federal court to subject a state official to retrospective monetary relief.[27] Any order by the court directing Jindal to pay money into the bankruptcy estate would in fact be an order authorizing retrospective relief from the state treasury to the bankruptcy estate. Guiding Light is not entitled to the relief it seeks because neither the *Young* exception nor *Edelman v. Jordan* permit this relief.

Judgment will be entered in accordance with this opinion.

### *JUDGMENT*

For the reasons assigned in the foregoing memorandum opinion.

**IT IS ORDERED:**

(1) The motion for summary judgment filed by Guiding Light Corporation d/b/a The Vision of Hope Clinic is **DENIED.**

(2) The motion for summary judgment filed by Bobby P. Jindal, Secretary of the Louisiana Department of Health & Hospitals is **GRANTED.**

(3) The complaint is **DISMISSED WITH PREJUDICE** at plaintiff's costs.

---

27. *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974).