Michael C. **PETRAZZOULO**, Plaintiff,

v.

**UNITED STATES MARSHALS SERVICE, J. Peck, John McCaffrey, Chautauqua County, Joseph Gerace, Jerome Ernewein and Lt. Zenon Panfil, Defendants.**

No. 97–CV–362H.

United States District Court,
W.D. New York.

March 17, 1998.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Currently pending for decision are the federal defendants' motion for dismissal, or alternatively, for summary judgment (Item 4), and the county defendants' motion for dismissal, or alternatively, for summary judgment (Item 15). For the following reasons, both motions are granted and the case is dismissed.

### BACKGROUND

The undisputed facts in this case are as follows. Plaintiff was a federal pretrial detainee in the custody of the United States Marshals Service (USMS) from January 8, 1996 to February 6, 1997. He was housed at the Chautauqua County Jail from January 9, 1996 to October 8, 1996, at which time he was transferred to the Erie County Holding Center (ECHC) (Item 6, ¶ 1; Item 19, ¶ 2).

On August 19, 1996, while at the Chautauqua County facility, plaintiff suffered a right subcondylar fracture (Item 6, ¶ 2; Item 10, Exs. B–2, B–4, B–5 & B–7; Item 19, ¶ 2). Plaintiff was subsequently treated by David Todd, D.M.D., M.D., who determined that because of the severely compromised condition of plaintiff's remaining teeth, the most effective treatment for his fractured jaw would include full mouth extractions (Item 1, ¶ 16; Item 6, ¶ 3; Item 10, Exs. B–2, B–4, B–5, B–7; Item 19, ¶ 3). Oral surgery was performed on August 20, 1996 (Item 1, ¶ 17; Item 10, Ex. B–4).

Dr. Todd saw plaintiff on three subsequent occasions over a period of a little more than one month (Item 10, Ex. B–2). On visits occurring one week and four weeks after his surgery, plaintiff reported that he was experiencing no difficulties related to the procedure (Id.). Dr. Todd's examination also revealed no sign of complications. Dr. Todd did discover a single retained root tip. It was subsequently removed, again with no evidence of complications (Id.).

On or about October 1, 1996, the USMS decided not to authorize the expenditure of federal funds for dentures. Their decision was based upon a determination that providing plaintiff with dentures would constitute elective, rather than necessary, medical care (Item 6, ¶ 9; Item 9, ¶¶ 4–5; Item 19, ¶ 13).

Plaintiff and persons acting on his behalf expressed their disagreement with the USMS's determination in letters dated October 1, 1996 and October 4, 1996 (Item 6, ¶¶ 13–14; Item 9, ¶ 6; Item 10, Exs. B–6, B–8). Following receipt of their objections, on or about October 7, 1996, the USMS in the Western District of New York referred this matter to USMS headquarters, Prisoner Services Division, for review (Item 6, ¶ 16; Item 9, ¶ 6; Item 10, ¶ 4). Captain Witham–Wilson, Chief Public Health Service officer for the USMS, also determined that the dentures would be considered elective medical treatment (Item 6, ¶¶ 16–17; Item 10, ¶ 7).

In addition to referring the matter for review, the USMS transferred plaintiff to the Erie County Holding Center (ECHC) on October 8, 1996, where a nutritious soft food diet could be provided (Item 6, ¶ 15; Item 9, ¶ 8; Item 10, Ex. B–9). On October 11, 1996, plaintiff was examined by Huron O. Hill, Dental Director at the ECHC (Item 7, ¶ 3). At that time, plaintiff reported no discomfort relating to his fractured jaw and tooth extractions (Id.).

Plaintiff was released from USMS custody on February 6, 1997, approximately five and one-half months after his teeth were extracted (Item 6, ¶ 19). Following his release, and prior to filing this lawsuit, plaintiff obtained dentures on his own (Item 19, ¶ 7, Ex. C).

Plaintiff commenced this action on May 2, 1997, seeking relief under the Supreme Court's holding in *Bivens*, 42 U.S.C. § 1983 and the Federal Tort Claims Act. According to plaintiff, defendants USMS and Chautauqua County were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution when they decided not to provide him with dentures. Plaintiff is seeking declaratory relief, injunctive relief directing the USMS or Chautauqua County to pay the cost of plaintiff's dentures, injunctive relief directing all defendants to secure dental treatment for plaintiff, monetary damages against the USMS and Chautauqua County reimbursing plaintiff for the cost of his dentures, and costs, expenses and attorney's fees (Item 1).

On July 21, 1997, the federal defendants, the United States Marshals Service, Jay Peck and John McCaffrey, moved for dismissal or summary judgment on the grounds that all requests for injunctive relief are moot, there is no subject matter jurisdiction over plaintiff's tort claim, plaintiff failed to exhaust administrative remedies, plaintiff's constitutional claims against the USMS are barred by the doctrine of sovereign immunity, plaintiff failed to allege personal involvement on the part of the individual federal defendants, plaintiff has failed to demonstrate that he suffered a violation of his constitutional rights, and the individual federal defendants are entitled to qualified immunity.

The county defendants, Chautauqua County, Joseph Gerace, Jerome Ernewein and Zenon Panfil, moved for dismissal or summary judgment on September 10, 1997, on the grounds that plaintiff fails to state a claim against the county defendants, all requests for injunctive relief are moot, plaintiff has failed to demonstrate that he suffered a violation of his constitutional rights, and the individual county defendants are entitled to qualified immunity.

On December 1, 1997, plaintiff responded to defendants' motions, addressing only defendants' claims that he did not suffer a violation of his constitutional rights.

## DISCUSSION

### I. INJUNCTIVE RELIEF.

In his first cause of action, plaintiff alleges that the USMS violated the eighth amendment's prohibition against cruel and unusual punishment when they refused to provide him with dentures. Plaintiff's second cause of action directs the same allegations at Chautauqua County through the fourteenth amendment. With respect to both of these defendants, plaintiff seeks declaratory relief as well as injunctive relief directing the USMS or Chautauqua County to pay for plaintiff's dentures and to secure such treatment for plaintiff (Item 1, ¶¶ 21–24).

Injunctive relief is an equitable remedy that is typically invoked to preserve the status quo pending a final determination

or to prevent future harm. To the extent that plaintiff is seeking an injunction directing reimbursement for the cost of his dentures, his claim should be construed as one for monetary damages rather than for injunctive relief. *See Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84 (2d Cir.1991) (rejecting argument that retroactive reimbursement represented injunctive relief rather than damages).

▮▮▮ As to plaintiff's requests that the court order the USMS and Chautauqua County to secure dental treatment for plaintiff, the request is moot. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin–Trigona v. Shiff,* 702 F.2d 380 (2d Cir.1983). *See also North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). By plaintiff's own admission, he has already obtained the treatment requested—that is, he now has dentures (Item 19, ¶ 7).

Accordingly, defendants' motions are granted with respect to all claims for injunctive relief.

## II. BIVENS CLAIM.

In his first cause of action, plaintiff claims that the USMS's refusal to provide him with dentures gives rise to "a cause of action resting directly on the Eighth Amendment's prohibition against cruel and unusual punishment pursuant to the United States Supreme Court decisions in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)" (Item 1, ¶ 22).[1]

The federal defendants move for dismissal pursuant to Rule 12(b)(6) for failure to state a claim, or in the alternative, for summary judgment. Because the federal defendants have submitted affidavits and exhibits in support of their motion, the motion is treated as one for summary judgment and disposed of as provided in Rule 56. Plaintiff had notice of defendants' alternative motion, and submitted his own affidavits and exhibits in response.

### A. *Defendant United States Marshals Service.*

▮▮▮ To the extent that plaintiff relies on *Bivens,* summary judgment is granted as to the USMS. *Bivens* held that where an individual's constitutional rights are violated by a federal agent, the victim has a right to recovery in federal court, even in the absence of a statute conferring such a right. *Carlson, supra,* 446 U.S. at 18. However, jurisdictional limitations allow a plaintiff to sue only the government officials responsible for the violation, and not the federal agency where they are employed. *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 483–86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (*Bivens* does not imply cause of action against the federal government or its agencies); *Platsky v. Central Intelligence Agency,* 953 F.2d 26, 28 (2d Cir.1991); *Mack v. United States,* 814 F.2d 120, 122–23 (2d Cir.1987) (*Bivens* actions against the United States are routinely dismissed for lack of subject matter jurisdiction) (citing *Keene v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)). Jurisdiction is therefore lacking with respect to the USMS, a federal agency.

### B. *Defendants McCaffrey and Peck.*

With respect to the individual USMS employees, the government argues that no question of fact exists as to whether plaintiff suffered a violation of his eight amendment rights, that the individual defendants were not personally involved in the alleged deprivation, and that they would, in any event, be entitled to qualified immunity with respect to plaintiff's claim.

---

1. Plaintiff's seeks declaratory and injunctive relief against the federal defendants pursuant to *Bivens* (Item 1, ¶¶ 6; 22). As stated above, plaintiff's claim for retroactive reimbursement for the cost of his dentures is treated as a claim for monetary damages, rather than for injunctive relief.

## 1. Eighth Amendment Violation.

■ The prohibition against cruel and unusual punishment includes an inmate's right to adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). In order to establish that this right has been violated, the inmate must satisfy a two-part test.

■ The first part of the test is objective, and requires the inmate to show that the alleged deprivation is "sufficiently serious." *Farmer, supra,* 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* This includes not only conditions affecting an inmate's current health problems, but also those that are "sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). According to the Second Circuit, this standard contemplates " 'a condition of urgency, one that might produce death, degeneration, or extreme pain.' " *Hathaway, supra,* 37 F.3d at 66 (2d Cir.1994) (quoting *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting)).

■ The second prong of the test is subjective and requires the inmate to show that the official had a "sufficiently culpable state of mind." *Wilson, supra,* 501 U.S. at 297, *quoted in Farmer, supra,* 511 U.S. at 834. The inmate must establish that the official acted or failed to act with deliberate indifference to the inmate's health or safety. As stated by the Second Circuit:

[A] prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Hathaway, supra,* 37 F.3d at 66 (quoting *Farmer, supra,* 511 U.S. at 837).

■ It is clear that dental care has been recognized as "one of the most important medical needs of inmates." *Ramos v. Lamm,* 639 F.2d 559, 576 (10th Cir.), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1980). The Second Circuit has noted, however, that:

[A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of ... prisoners would not in freedom or on parole enjoy the excellence in dental care which the plaintiffs understandably seek on their behalf. We are governed by the principle that the objective is to "provide the minimum level of [dental] care required by the Constitution." *Ruiz v. Estelle,* 679 F.2d 1115, 1150 (5th Cir.), *vacated in part as moot,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). "[T]he essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir.1981) (citation omitted).

*Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) (reviewing the imposition of injunctive relief based upon allegations of insufficient dental care).

The question in the present case, then, is whether dentures were a medical necessity for plaintiff, or merely cosmetic. The record reveals that on September 11, 1996, David Todd, D.M.D., M.D., wrote to the Chautauqua County Jail regarding plaintiff's treatment. Dr. Todd stated, "I recommended to Mike that he have complete maxillary and mandibular dentures fabricated in one months time" (Item 10, Ex. B–7; Item 19, Ex. A). A copy of the letter was forwarded to Jay Peck of the USMS on October 1, 1996 (Item 10, Ex. B–6). John McCaffrey, United States Marshal in the Western District of New York, elected not to authorize the expenditure of federal funds for dentures on the ground that such treatment constituted elective medical care (Item 9, ¶¶ 1, 3, 4).

The federal defendants argue that it is "highly possible" that Dr. Todd's recommendation was meant to serve as a timetable, merely indicating when plaintiff's gums would be sufficiently healed to be fitted for dentures, rather than as a medical prescription of required treatment. However, the government has not provided an affidavit from Dr. Todd or any other documentary evidence that would support this view.

In response, plaintiff has submitted an affidavit stating, "Dr. Todd explained to me that I had to have dentures made for me to use within a month, because not to do so would have a severe, negative, medical impact on me. Dr. Todd explained to me that dentures were required, absolutely" (Item 19, ¶ 4).

■ A serious medical need has been defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1991); *Ramos, supra*, 639 F.2d at 575; *Todaro v. Ward*, 431 F.Supp. 1129 (S.D.N.Y.1977), *aff'd*, 565 F.2d 48 (2d Cir. 1977).

■ Here, there is considerable dispute as to whether Dr. Todd's "recommendation" should be construed as a mere suggestion or as a medical prescription for required treatment. Thus, a question of fact does exist as to whether the alleged deprivation was "sufficiently serious" to rise to the level of a constitutional violation.

■ As to the second part of the eighth amendment analysis, "deliberate indifference" is usually evidenced by proof that corrections personnel intentionally denied, delayed access to or interfered with prescribed treatment. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976); *Gill v. Mooney*, 824 F.2d 192, 195–96 (2d Cir.1987); *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir.1977).

The federal defendants do not dispute that they received Dr. Todd's letter, or that they denied plaintiff's requests for dentures. They argue, however, that they promptly and carefully considered this matter and were not indifferent to plaintiff's needs.

■ As already discussed, it is unclear on the face of Dr. Todd's letter whether the "recommendation" he made to plaintiff was in fact a prescription for treatment. There is no evidence that Dr. Todd ever wrote an actual prescription for dentures, nor did he make any mention of dentures in plaintiff's medical record.

As for defendants' actions in response, it is clear that defendant McCaffrey reviewed this matter prior to the expiration of the one month period mentioned in Dr. Todd's letter. Furthermore, immediately upon receiving plaintiff's objections to his decision, defendant McCaffrey sought review of his determination that dentures were elective and also transferred plaintiff to another facility where a nutritious soft diet could be assured. Captain Withiam–Wilson of the U.S. Public Health Service subsequently agreed with McCaffrey's determination. She based her decision on the lack of any evidence of pain or suffering, a review of plaintiff's diet, and her finding that a delay in receiving dentures would not negatively impact plaintiff's long-term health or preclude him from obtaining dentures in the future (Item 10, ¶ 8).

Plaintiff, in turn, has failed to raise any material issue of fact as to whether defendants knew of and intentionally disregarded an excessive risk to his health or safety. Although plaintiff did submit an affidavit stating that he "was in pain and suffered for the rest of [his] stay," this vague assertion directly contradicts his statements to Drs. Todd and Hill and the record available to defendants at the time their determination was made.

Plaintiff relies on *Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir.1989), in support of his claim. However, the present case is distinguishable from *Hunt*, where a triable issue of deliberate indifference was found. In *Hunt*, the plaintiff alleged that the loss of his dentures in a prison riot caused severe pain, bleeding gums, and breaking teeth. He also alleged that although prison officials were aware of his pain and damage to his teeth, the defendants took no action to provide pain relief or prescribe a soft-food diet and de-

layed three months in obtaining replacement dentures.

Unlike *Hunt,* this is not a case in which prison officials completely failed to attend to the plaintiff. It is clear from the record that plaintiff received prompt treatment for his broken jaw. Following his full mouth extraction, plaintiff received pain medication. In response to complaints lodged on his behalf, plaintiff also received a soft food diet.

Accordingly, plaintiff has failed to raise a question as to whether the individual federal defendants had a "sufficiently culpable state of mind," and defendants' motion for summary judgment on this ground is granted.

## 2. Personal Involvement in the Alleged Deprivation.

The government moved for dismissal under Rule 12(b)(6) on the ground that plaintiff failed to plead with particularity the personal involvement of Peck and McCaffrey.

■ It is well-settled that a defendant's personal involvement in the alleged constitutional violation is a prerequisite to an award of monetary damages. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994);[2] *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

■ In the present case, defendant McCaffrey submitted an affidavit in which he admitted that he is responsible for providing "a reasonable and necessary level of medical care services to ensure the well being of all prisoners in my custody," and that he elected not to authorize dentures for plaintiff (Item 9, ¶¶ 2, 4). Thus, defendant McCaffrey's personal involvement is clear.

■ As to defendant Peck, the affidavits and exhibits presented by the government clearly state that it was defendant McCaffrey who was responsible for the decision to deny

plaintiff dentures, as well as for other actions taken with respect to plaintiff's complaints.

Plaintiff does not dispute defendant McCaffrey's affidavit, nor does he provide any other evidence indicating that defendant Peck was in any way involved in the decision to deny the requested treatment. In fact, plaintiff's responding affidavit does not include any assertions as to the individual conduct of either McCaffrey or Peck, and states only that the USMS decided not to authorize dentures for him (Item 19, ¶ 5).[3]

Accordingly, based on the admissions in his affidavit, summary judgment on this ground is not appropriate with respect to defendant McCaffrey. Defendants' motion is granted as to defendant Peck for failure to allege personal involvement.

## 3. Qualified Immunity.

■ In a *Bivens* action, a defendant is entitled to judgment as a matter of law if he can demonstrate, upon the undisputed facts, that the rights claimed to have been violated were not "clearly established" at the time of the alleged deprivation. Even where the plaintiff's rights are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Ayeni v. Mottola,* 35 F.3d 680, 684 (2d Cir. 1994), *cert. denied,* 514 U.S. 1062, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995) (citing *Soares v. Connecticut,* 8 F.3d 917, 920 (2d Cir.1993)); *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990). The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of defendant's actions. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ In the present case defendants McCaffrey and Peck are entitled to qualified immunity under both tests. At oral argu-

**2.** The *Wright* case involved a claim under 42 U.S.C. § 1983. Both *Bivens* and § 1983 actions are designed to provide redress for constitutional violations. Although the two actions are not precisely parallel, there is a " 'general trend in the appellate courts to incorporate § 1983 law into Bivens suits.' " *Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir.1987) (quoting *Ellis v. Blum,* 643 F.2d 68, 84 (2d Cir.1981)).

**3.** I note that in plaintiff's complaint as well, his only allegation is that the USMS refused to pay for treatment (Item 1, ¶ 18). No factual allegations are made as to any of the individual named defendants.

ment, the parties agreed that while prison inmates have a clearly established right to dental care, they do not have a clearly established constitutional right to dentures. In other words, while inmates cannot be denied a minimal civilized measure of care, they do not have a clearly established right to receive their preferred course of treatment. *See Malsh v. Austin,* 901 F.Supp. 757, 765 (S.D.N.Y.1995) ("To the extent that the plaintiff claims he has any statutory or constitutional right beyond his clearly established right to dental care, ... such a right was certainly not clearly established and indeed would not have been recognizable by a reasonable official.").

 Even if this court were to determine that plaintiff's constitutional right to dental care does include the provision of dentures, defendants would still be entitled to qualified immunity. Defendants decision not to authorize dentures was made in accordance with a USMS policy not to fund elective medical procedures for pretrial detainees. *See* 28 C.F.R. § 0.111(k);USMS Policy and Procedure Manual, Ch. 5.6–1(a) (1994). According to Captain Withiam–Wilson, this policy is based upon the typically short-term nature of the USMS's custody over detainees. Treatment focuses on the elimination of pain and suffering, rather than long-term or preventative medical care, with the recognition that such services will be available to plaintiff upon his release, or should he be incarcerated, from the Bureau of Prisons (Item 10, ¶ 6, Ex. C).

In this case, defendant McCaffrey determined that dentures were elective treatment, a decision supported by Captain Withiam–Wilson. Plaintiff was provided with pain medication and a soft food diet. In light of USMS policy, defendants' actions focusing on the minimization of pain and suffering were objectively reasonable.

As already established above, plaintiff's clearly established right to medical care includes the right to treatment prescribed by a physician. Plaintiff alleges in his complaint that he was denied prescribed treatment. Again, however, I find that it was objectively reasonable for defendants to believe that their actions with respect to plaintiff's treat-

ment were lawful. Dr. Todd reported that he had "recommended to [plaintiff]" that he be fitted for dentures in one month's time. The parties disagree as to whether this "recommendation" should be construed as a mere suggestion or as a prescription for prescribed care. Defendants were presented with a medical record stating that plaintiff was suffering little discomfort and no complications from the extraction of his teeth. In addition, they received a vaguely worded recommendation, made not to defendants, but to the plaintiff-patient. Based upon the record, I find that their decision to classify plaintiff's dentures as elective treatment was objectively reasonable.

For all of the reasons stated, the federal defendants' motion for summary judgment on the ground that McCaffrey and Peck are entitled to qualified immunity is granted.

### III. 42 U.S.C. § 1983.

In his second cause of action, plaintiff alleges that his rights under the eighth and fourteenth amendments were violated when the Chautauqua County Jail "refus[ed] to provide for Mr. Petrazzoulo's treatment" (Item 1, ¶ 24).

The county defendants have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, or for summary judgment. Although the county defendants have not submitted any affidavits or exhibits in support, they incorporate by reference the affidavits and exhibits presented by the federal defendants. As already noted, plaintiff has responded with his own affidavits and exhibits. Therefore, the county defendants' motion will also be treated as one for summary judgment.

### A. Eighth Amendment Violation.

 The standard applicable to plaintiff's claim has already been set forth above. As with the federal defendants, plaintiff fails to raise any question as to whether the county defendants had a "sufficiently culpable state of mind."

The county defendants assert that on the basis of plaintiff's complaint and the federal

government's statement of facts, it is undisputed that the federal defendants were solely responsible for plaintiff's dental care, regardless of the fact that plaintiff was housed in the county's jail.

Indeed, plaintiff's complaint states that he was a *federal* prisoner, that the USMS approved some treatment for him but refused to provide him with dentures, and that the USMS had the authority to approve and pay for his treatment (Id. at ¶¶ 1, 16, 17, 18). In fact, the only allegation involving the county defendants is that the Chautauqua County Jail[4] did not provide him with dentures because the USMS would not reimburse the cost.

As already stated, defendant McCaffrey admits that he is responsible for providing medical care to federal prisoners in his custody and that he personally made the determination not to provide plaintiff with dentures. The record also reveals that all requests for dental treatment made by or on behalf of plaintiff were addressed to the USMS and not to Chautauqua County. In short, nothing in plaintiff's complaint, affidavits or exhibits suggests that the county defendants were aware of and deliberately indifferent to a serious medical need.

Furthermore, the county defendants point out that Dr. Todd's recommendation, made on September 11, 1996, was that plaintiff have dentures fabricated in one months time. Plaintiff was transferred out of the Chautauqua County Jail on October 8, 1996, prior to the date established by plaintiff's treating dentist as appropriate for the fabrication of dentures.

Accordingly, the county defendants' motion is granted for failure to state a claim.

### B. Qualified Immunity.

▮ The standard for determining whether the county defendants are entitled to qualified immunity is set forth above, as is this court's determination as to plaintiff's clearly established rights. Thus, the only question that need be addressed here is

whether, given their knowledge of Dr. Todd's "recommendation," the county defendants' failure to provide plaintiff with dentures was objectively reasonable. In light of the fact that plaintiff was a federal prisoner who was transferred out of the county's facility prior to the date established for the provision of treatment, I find that the defendants' actions were objectively reasonable.

Accordingly, the county defendants' motion for summary judgment is granted on this ground as well.

## IV. FEDERAL TORT CLAIMS ACT.

Plaintiff's third cause of action alleges that "the U.S. Marshals Service breached its duty to exercise reasonable care in providing for the safety of all federal prisoners," and seeks monetary relief under the Federal Tort Claims Act (FTCA) (Item 1, ¶ 26).

The federal defendants maintain that this court lacks subject matter jurisdiction over plaintiff's third cause of action. They argue that under the FTCA, only the United States may be held liable for torts committed by a federal agency or its employees, and that neither the USMS nor the two individual USMS employees named as defendants may be sued directly on claims brought under 28 U.S.C. § 1346(b). *See* 28 U.S.C. § 2679(a); *C.P. Chemical Co., Inc. v. United States,* 810 F.2d 34, 36–37 n. 1 (2d Cir.1987); *Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252, 1256 (2d Cir.1975). Furthermore, the federal defendants claim that plaintiff has not met the jurisdictional prerequisite for filing such an action in federal district court because plaintiff has not alleged or demonstrated that he filed an administrative claim with the USMS as required by 28 U.S.C. § 2675(a). *Adams by Adams v. U.S. Dep't of Housing & Urban Dev.,* 807 F.2d 318, 320 (2d Cir.1986); *In re Agent Orange Product Liability Litigation,* 818 F.2d 194, 196 (2d Cir.1987); *Johnson by Johnson v. United States,* 788 F.2d 845, 848–49 (2d Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986).

---

4. Plaintiff does not make any factual allegations regarding any of the individual county defendants, nor does he allege that any particular conduct was in accordance with a custom or policy of Chautauqua County.

**412**

While I find the government's arguments persuasive, there is a more fundamental reason for dismissing plaintiff's FTCA claim. Plaintiff's claim is not cognizable under § 1346(b). To be actionable under § 1346(b), a claim must allege that the United States "would be liable to the claimant" as a private person "in accordance with the law of the place where the act or omission occurred." The Supreme Court has consistently held that § 1346(b)'s reference to the "law of the place" means that one must look to the law of the state where the act or omission occurred as the source of substantive liability. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (citations omitted).

Plaintiff's claim is predicated solely on an alleged violation of his rights under the eighth and fourteenth amendments. Because federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right, § 1346(b) does not provide a cause of action for plaintiff's claim. *Id.*

Accordingly, plaintiff's third cause of action is dismissed.

### *CONCLUSION*

For all of the reasons set forth above, the federal defendants' motion (**Item 4**) is GRANTED, the county defendants' motion (**Item 15**) is GRANTED, and the case is dismissed.

**SO ORDERED.**